[No. 16515.  *En Banc.*  December 29, 1922.]

*In the Matter of the Estate of* JOSEPHINE C. SHERWOOD, *Deceased.*

THE STATE OF WASHINGTON, *Respondent,* v. SPOKANE AND EASTERN TRUST COMPANY, *as Administrator etc., Appellant.*[1]

TAXATION (225)—INHERITANCE TAXES—NATURE AND POWER TO IMPOSE.  The right to exact inheritance taxes rests upon the plenary power of the state to direct the disposition of the property of decedents, the right to will the same being dependent on the statute law of the state having jurisdiction over the property.

STATUTES (56)—CONSTRUCTION—INTENT OF LEGISLATURE.  The rule of statutory construction requiring effect to be given to the legislative intent applies only where the language is of doubtful meaning or the strict letter of the act would lead to absurd or incongruous results.

SAME (54)—CONSTRUCTION—PRINCIPLES AND MAXIMS—EXPRESSION OF ONE, EXCLUSION OF OTHERS.  While the maxim that the expression of one thing is the exclusion of another is only an aid to the discovery of legislative intent, it is generally decisive where there is a specific enumeration of things without general words.

TAXATION (229)—INHERITANCE TAXES—EXEMPTIONS—DEDUCTION FOR FEDERAL ESTATE TAX.  Rem. Comp. Stat., § 11201, subjecting to an inheritance tax all property within the jurisdiction of the state "which shall pass by will or by the statutes of inheritance," authorizes the imposition of a tax upon the amount due the United States upon the Federal estate tax, which is not to be deducted before computation of the state tax (MACKINTOSH and BRIDGES, JJ., dissenting).

SAME (228)—INHERITANCE TAXES—PROPERTY LIABLE—SITUS OUTSIDE OF STATE.  Under Rem. Comp. Stat., § 11203, imposing an inheritance tax upon all the property, except real estate, of any decedent domiciled within the state at the time of his death, even though it was situated outside of the state, this state has power to levy a tax on movable property outside the state, to be collected out of any property in this state, the statute recognizing no separation of the estate for the purposes of an inheritance tax.

[1]Reported in 211 Pac. 734.

SAME (229)—INHERITANCE TAXES—EXEMPTIONS—NATIONAL BANK STOCK. The movable property outside the state, subject to inheritance tax, includes stock in national banks; since U. S. Rev. St., § 5219, providing that such shares shall be taxed in the city or town where the bank is located, and not elsewhere, applies only to general or annual taxes.

SAME (229)—EXEMPTIONS—COMPUTATION—TIME FOR DEDUCTION. Rem. Comp. Stat., § 11202, providing that ten thousand dollars of the net value of the estate shall be exempt from inheritances taxes, requires that the same be deducted from the net estate, as if the amount had no existence before computation of the graduated blocks, assessed at different rates, and not from the first $50,000 item or part of the estate, taxed at less rate than the balance of the estate.

SAME (227)—PERSONS LIABLE FOR TAX—NONRESIDENT LEGATEES—PAID IN ANOTHER STATE. Where a decedent, domiciled in this state, left property both in this state and in other states, legacies to non-residents may be charged with an inheritance tax regardless of the residence of the legatees or the situs of the property from which the legacies are paid; especially where there is but one estate passing to the same residuary legatees, so that it would make no difference in the final result from which of the properties the tax is taken.

Cross-appeals from a judgment of the superior court for Spokane county, Blake, J., entered March 1, 1921, upon an agreed statement of facts, determining the amount of an inheritance tax. Affirmed.

*Post, Russell & Higgins* and *Harold Wheeler* (*Robert Duncan,* of counsel), for appellant.

*The Attorney General* and *Geo. G. Hannan, Assistant,* for respondent and cross-appellant.

*Hayden, Langhorne & Metzger, amici curiae.*

FULLERTON, J.—This proceeding results from a controversy between the administrator of the estate of Josephine C. Sherwood, deceased, and the state tax commissioner over the amount of the inheritance tax collectible from the estate of the deceased by the state of Washington. The controversy was submitted to the trial court upon an agreed case containing the facts

upon which the controversy depends, and the points of difference between the parties were determined by that court partly adverse to the one and partly adverse to the other. The administrator appeals from that part of the judgment entered which adversely affects the estate, and the state appeals from that part of the judgment adverse to the contentions of its commissioner.

The facts necessary to an understanding of the points of difference between the parties are, in substance, these: Josephine C. Sherwood and her husband, John Dickinson Sherwood, died from the effects of a common cause in the county of San Mateo, state of California, on November 23, 1919. Each of the decedents was, at the time, a resident of the state of Washington. Mrs. Sherwood left an estate in the state of Washington consisting of personal property, held in her own separate right, of the value of $729,361.43. She also left an estate in the state of California, consisting of real property of the value of $8,076, and personal property of the value of $178,620.47. Her sole surviving next of kin was a sister, one Mary R. Runyon. Mrs. Sherwood was born in the state of California and resided there from the time of her birth until her marriage with John Dickinson Sherwood. Mary R. Runyon is, and has been since her birth, a resident of the state of California.

Mrs. Sherwood left a will, the contents of which are not specifically set out in the agreed statement. . It appears, however, that she bequeathed to St. Luke's Hospital, in the city of Spokane, the sum of $10,000; to Mary Sherwood, a resident of the state of California, the sum of $5,000; to Warner Sherwood, also a resident of California, the sum of $5,000; and that she directed certain property in the state of Washington,

valued at $20,000, to be converted into money, and the money distributed, $2,000 to Chandler M. Woods of the city of Spokane, Washington; $2,000 to the Hutton Settlement in the city of Spokane, Washington; one-half of the remainder to the Ladies' Benevolent Society of Spokane, Washington, and the remainder to the Salvation Army of Spokane, for the support of the Home for Women and Maternity Hospital, maintained by that organization in the city of Spokane. The remainder of the estate, from what appears elsewhere in the statement, was possibly directed to be divided between her husband and her sister.

The will was admitted to probate in the superior court of Spokane county, state of Washington, on December 2, 1919, and the Spokane & Eastern Trust Company was appointed administrator with the will annexed of that part of the estate which was within the state of Washington. The will was also admitted to probate in the superior court of Tehama county, state of California, on May 20, 1920, and Mary R. Runyon was appointed administratrix with the will annexed of the property within the state of California.

John Dickinson Sherwood also left an estate, a part of which was in the state of Washington and a part within the state of California. Of the estate within the state of Washington, the present administrator is the executor under his will. One W. B. Cahoone is the administrator of the part of the estate in California.

The administrator of that part of the estate of Mrs. Sherwood which is within the state of Washington paid to the Collector of Internal Revenue the estate taxes due the United States on the whole of the estate; the taxes so paid amounting to the sum of $36,512.46. Of this sum $4,278.79 was paid in cash, and the balance by turning over to the collector Liberty and Victory bonds

of the United States belonging to the estate of Mrs. Sherwood; the bonds being taken by the collector at their face value with accrued interest.

Of the personal property in the state of California left by Mrs. Sherwood, property to the value of $60,000 consisted of shares of capital stock in a national bank. The remainder consisted of shares of capital stock in a state bank, a note secured by mortgage on real property, United States treasury certificates, jewelry, furniture, and cash in banks. The property was acquired by Mrs. Sherwood through inheritance from her father and mother, or was the proceeds of property so acquired. None of it, with the exception of the jewelry, had ever been brought within the state of Washington, but has always remained within the keeping of her agents in the state of California, although subject to her direction and control.

The points of difference between the parties are four in number, and are stated in the following language:

"(1) The defendant above named contends that the Government Bonds and moneys paid for the Federal estate tax did not pass to Mary R. Runyon or the J. D. Sherwood estate and are not to be taken into consideration in determining inheritance taxes to be paid by said parties. In other words, that they are to be subtracted from the estate, and inheritance taxes are to be computed only upon the estate remaining. The tax commissioner denies that said defendant is entitled to deduct the said bonds and cash so paid on account of Federal estate taxes. It is agreed that, if the said contention of the tax commissioner is correct, then a further sum of $912.81 is due herein to the state of Washington as inheritance taxes upon the property passing from the estate of said Josephine C. Sherwood to the estate of said John Dickinson Sherwood, and also the further sum of $1,643.06 as inheritance taxes upon the property passing from the estate of said Josephine C. Sherwood to said Mary R. Runyon.

"(2) The defendant takes the position that no inheritance tax is due the state of Washington upon the California bank stocks, the cash, the treasury certificates, the jewelry, the Kuhle mortgage, and the other personal property forming part of the California estate of said Josephine C. Sherwood. The state tax commissioner takes the position that inheritance taxes are to be paid upon said property the same as if said property and all of the same were within the state of Washington at the time of the decease and are administered upon by the Spokane and Eastern Trust Company as administrator. It is agreed that, if the said California stocks are subject to inheritance tax to the state of Washington, then there is still due to the state of Washington the further sum of $11,873.34 by reason of the passing of said California bank stocks from the California estate of Josephine C. Sherwood to said Mary R. Runyon. It is also agreed that, if the other personal properties other than said stocks passing or to pass from the California estate of Josephine C. Sherwood to said estate of John Dickinson Sherwood and to said Mary R. Runyon as aforesaid, are subject to an inheritance tax to the state of Washington, then and in that case there is due to the state of Washington the further sum of $698.83 as inheritance tax upon such other property passing or to pass to the estate of John Dickinson Sherwood, deceased, and the further sum of $1,271.51 as inheritance tax upon the property passing or to pass to said Mary R. Runyon.

"(3) Under the statute an exemption is allowed of the sum of $10,000 on account of the property passing to the J. D. Sherwood estate. The defendant takes the position that said $10,000 shall be subtracted from the net estate passing to the J. D. Sherwood estate and the balance shall be subject to inheritance taxes at the rates prescribed by the statute. The state tax commissioner takes the position that said exemption shall be subtracted from the first $50,000 item or part of the estate passing to the said J. D. Sherwood estate. It is agreed that, if the position of the tax commissioner is correct upon this point, then there is due to the state of Washington the further sum of $400 as inheritance

tax upon the property passing or to pass from the Washington estate of Josephine C. Sherwood to the estate of John Dickinson Sherwood, deceased, as aforesaid.

"(4) No inheritance taxes have been paid to the state of Washington upon the two legacies of $5,000 each to Mary Sherwood and Warner Sherwood. The defendant claims that no inheritance tax is due to the state of Washington upon either of said two legacies, and also claims that, even if such inheritance tax is due, the defendant as administrator of the Washington estate of Josephine C. Sherwood has no duty or authority to pay the same out of the assets of said estate in its charge and keeping. The state tax commissioner claims, on the other hand, that an inheritance tax of $300 is due to the state of Washington upon each of said two legacies, and that the same should be paid by this defendant out of the assets of the Washington estate of said Josephine C. Sherwood."

The trial court ruled points one, two and four adverse to the claim of the administrator, and point three, in its favor. The appeals question the correctness of these rulings.

Before considering the first of the points of difference, it is well to call to mind the principle upon which taxes upon and exactions from the estate of a deceased person rests. The right of the owner of property to direct what disposition shall be made of it after his death is not a natural right which follows from mere ownership. On the contrary, the right has its sanction in the laws of the state having jurisdiction over the person of the donor or jurisdiction over the property. The state may, if it so chooses, take to itself the whole of such property, or it may take any part thereof less than the whole and direct the disposition of the remainder; and this without regard to the wishes or direction of the person who died possessed of it, and without regard to the claims of those to whom he has

directed that it be given. Stated in another way, the
state's power over such property is plenary, and its
right to direct its disposition unlimited. It follows
from this that those claiming the property must find
the foundation for their claim, in the laws of the state.
They can have no claim superior to that which such
laws give them. The specific question on this branch
of the case, therefore, is, does the law of this state
provide for a deduction from the total value of an
estate of the amount paid the Federal government as
an estate tax before the state inheritance tax is com-
puted thereon.

The statute creating the inheritance tax and provid-
ing for its collection is found in Rem. Comp. Stat.,
§§ 11201-11218, inclusive. This statute is too extended
to permit its being set forth here at length, but a mere
cursory reading of it will show that there is no express
provision for such a deduction, and it must follow that,
if the provision is within the act at all, it is there by
necessary intendment. But the courts are loath to
read into a statute something which the legislature has
not expressly put therein. It is true, undoubtedly,
that the first in importance of the rules of statutory
construction is the rule which requires the courts to
search out and give effect to the legislative intent, but
the rule is not without its limitations. It does not
mean that the courts are at liberty, in all instances,
when searching for the legislative intent, to go beyond
the literal wording of the statute, although the literal
construction be harsh and may seem to work inequity
when measured by those standards usually regarded
as just and equitable. On the contrary, where the
meaning of the language used is plain, and the
language is in itself susceptible of a rational construc-
tion, the meaning of the statute must be found from

the language of the act itself. It is only where the language is of doubtful meaning, or where an adherence to the strict letter of the statute would lead to absurd or incongruous results, or would make one part of the statute contradictory of another part, or where it is plain from the entire context and evident purpose of the statute that the language used on a particular matter did not express the legislative intent thereon, that the courts will depart from the literal wording.

In the present instance, there are a number of reasons which forbid a departing from the literal wording of the statute. Some of them will be stated further on in the discussion, but the more general reasons may be stated here. The first and foremost is, of course, that the statute is not, in its language on the particular matter, obscure or doubtful, and does not in express terms provide for the deduction, although it enumerates a number of specific items which may be so deducted. Again, the statute in enumerating these items confines the enumeration to specifically named expenditures without general words of extension common in instances where matters of like kind are intended to be included, rendering the maxim anglicised as "The expression of one thing is the exclusion of another," applicable. This maxim, we are aware, expresses a rule of statutory construction rather than a rule of substantive law, and is thus only an aid to the discovery of the legislative intent, yet it is generally considered as of deciding importance in instances, like the present, where there is a specific enumeration of things without general words which might include others. Again, the act was passed at the legislative session in 1901. At that time there was imposed by the Federal government a Federal estate tax. This fact must have been known to the legislature, yet it

did not, in enumerating the items of expenditure which should be deducted before computing the state tax, mention this item. Again, the act in enumerating the deductions provides that a deduction may be made for a "family allowance not to exceed $1,000;" yet this sum did not, at the time of its passage, equal the sum which could be properly allowed under the statute for such purpose, and does not equal the sum which must now be so allowed; and seemingly, if the legislature did not intend a strict limitation upon the deduction which could be made before computing the state tax, it would hardly have placed a limitation upon this, the most equitable, perhaps, of all allowances. These considerations, it seems to us, if not conclusive of the question, are strongly persuasive that no such deduction was intended.

The act, however, provides:

"All property within the jurisdiction of the state, and any interest therein, whether belonging to the inhabitants of this state or not, and whether tangible or intangible, which shall pass by will or by the statutes of inheritance of this or any other state, or by deed, grant, sale or gift made in contemplation of the death of the grantor or donor, or by deed, grant or sale or gift made or intended to take effect in possession or in enjoyment after the death of the grantor or donor to any person in trust or otherwise, shall, for the use of the state, be subject to a tax . . ." Laws of 1917, p. 593, § 1, Rem. Comp. Stat., § 11201.

Counsel in their argument stress the words "All property . . . which shall pass," and argue therefrom that the words, of necessity, mean such property as passes to the devisees, legatees or heirs of a deceased person's estate, and not such part of it as may be taken for other purposes. Attention is called, also, to the distinction between the various taxes levied on a decedent's estate, and it is pointed out that our tax is

an inheritance tax, as distinguished from a death duty or estate tax, such as is the tax levied by the Federal government. But we cannot think the argument conclusive. It will be observed that the provision is not that the tax shall be levied upon such property as shall pass to devisees, legatees or heirs, but is that it shall be levied upon such property as "shall pass by will, or by the statutes of inheritance," and the other enumerated methods, making no mention of the persons to whom it shall pass. This, as we understand it, means that the tax may be levied on all property passing by the enumerated methods as distinguished from property which does not so pass, rather than upon property which passes to devisees, legatees, or heirs, as distinguished from like property which is disposed of for other uses. This conclusion is fortified, we think, by the provision relating to the family allowance. This sum, as we have said, did not, at the time of the enactment of the law, and does not now, equal the sum properly allowable under the statutes for that purpose; yet it can hardly be successfully contended that a greater sum than the sum specified could be deducted before computing the tax, although, where a sum in excess of the limited sum is actually allowed for family expenses, it is manifest that the devisees, legatees or heirs of the estate do not receive it. The power to tax this excess sum must rest upon a principle which would permit the taxation of the sum paid as the Federal estate tax.

Again, it is pointed out that this court has held that the tax imposed by our statute is not a tax upon the estate, but a tax on the right to receive the property of the estate (*State v. Clark,* 30 Wash. 439, 71 Pac. 20; *In re Clark's Estate,* 37 Wash. 671, 80 Pac. 267; *In re White's Estate,* 42 Wash. 360, 84 Pac. 831; *In re Stixrud's Estate,* 58 Wash. 339, 109 Pac. 343, Ann. Cas.

1912A 850, 33 L. R. A. (N. S.) 632; *In re Corbin's Estate,* 107 Wash. 424, 181 Pac. 910, 7 A. L. R. 685; *In re Ferguson's Estate,* 113 Wash. 598, 194 Pac. 771); and it is argued that this conclusion cannot soundly rest on any other principle than the principle that the tax is leviable only on the amount actually received.

But clearly it is within the power of the legislature to declare, for the purposes of taxation, what shall be deemed to have been received by those succeeding to the property; that is, it is within the power of the legislature to say that the whole estate passes to the successor for the purposes of taxation, and then provide that certain parts of it shall be devoted to uses which prevent it from actually passing. Moreover, the name by which the tax is called is of but little moment in determining its nature. In the language of Mr. Justice White in *Knowlton v. Moore,* 178 U. S. 41, 56:

"Although different modes of assessing such duties prevail, and although they have different accidental names, such as probate duties, stamp duties, taxes on the transaction, or the act of passing of an estate or a succession, legacy taxes, estate taxes or privilege taxes, nevertheless tax laws of this nature in all countries rest in their essence upon the principle that death is the generating source from which the particular taxing power takes its being and that it is the power to transmit, or the transmission from the dead to the living, on which such taxes are more immediately rested."

These considerations lead to the conclusion, we think, that the legislature intended to tax the entire estate less certain specifically enumerated deductions, and that, since the Federal estate tax is not among the enumerated items to be deducted, the state may legally collect a tax thereon.

The industry of counsel has brought to our attention numerous cases from other jurisdictions in which the question under consideration is discussed and deter-

mined. These are in some degree conflicting; at least, we are unable to discover any general principle by which they can in all instances be differentiated. Some, however, which hold contrary to the conclusion we have reached, can be distinguished because of the differences in the statutes. For example, in Minnesota, in Pennsylvania, in Illinois, in New Jersey, and in Indiana, it is held that the Federal tax is deductible, because the state tax is based on the "clear beneficial interest" or "clear market value" of the property which passes from the ancestor to the heir or legatee, and does not, as our statute does, provide for a tax upon the whole estate less certain specifically enumerated deductions. See, for illustration, *State ex rel. Smith v. Probate Court,* 139 Minn. 210, 166 N. W. 125; *In re Knight's Estate,* 261 Pa. St. 537, 104 Atl. 765; *People v. Pasfield,* 284 Ill. 450, 120 N. E. 286; *State v. First Calumet Trust & Savings Bank,* 71 Ind. App. 467, 125 N. E. 200; *In re Roebling's Estate,* 89 N. J. Eq. 163, 104 Atl. 295, 467.

In Connecticut, it is held that the Federal estate tax should be deducted before computing the succession tax, because,

"By the provisions of the Act of 1915, the succession tax is measured by the value of the property passing to a beneficiary, and hence it is his share of the net estate after the claims against the estate and the charges of administration have been deducted,"

and that the Federal tax is deductible under "the head of administration expenses." *Corbin v. Townshend,* 92 Conn. 501, 103 Atl. 647. Our statute differs from the Connecticut statute in that it contains no general provision for deducting the expenses of administration.

In the cases of *In re Inman's Estate,* 101 Ore. 182, 199 Pac. 615; *Old Colony Trust Co. v. Burrell,* 238

Mass. 544, 131 N. E. 321; *People v. Bemis,* 68 Colo. 48, 189 Pac. 32, and *In re Miller's Estate,* 184 Cal. 674, 195 Pac. 413, the Federal tax was held deductible largely because of a distinction between the nature of the Federal tax and the nature of the state tax—a distinction which, in our opinion, is not of controlling effect.

Of the cases holding the Federal tax not deductible, those perhaps more nearly in accord with our conclusion are: *In re Sanford's Estate,* 188 Iowa 833, 175 N. W. 506; *In re Week's Estate,* 169 Wis. 316, 172 N. W. 732; and *In re Sherman's Estate,* 179 App. Div. 497, 166 N. Y. Supp. 19.

But it is said that our own case of *In re Ferguson's Estate,* 113 Wash. 598, 194 Pac. 771, is contrary to the rule which we here think applicable. In that case we held that, where a part of the real property belonging to the estate had been sold by the administrator at less than its appraised value for the purpose of paying debts, the state tax should be computed upon the appraised value of the real property remaining and upon the prices received for the real property sold, and not upon the entire appraised value of the estate. There is much in the reasoning of the case which would sustain a deduction of the Federal tax before computing the state tax, but the question was not before us for decision, and was not decided. On the contrary, the question was not suggested in the case, the fact being that the Federal tax was not deducted from the amount on which the state tax was computed. We cannot, therefore, consider it as decisive of the question now before us.

Relative to the second of the points of difference, *viz.,* whether the personal property having its situs in the state of California is subject to an inheritance tax in this state, the applicable section of the statute reads as follows:

"Except as to the limitations prescribed in section 11202 from the inheritance tax and real property located outside the state passing in fee from the decedent owner, the tax imposed under section two shall hereafter be assessed against and be collected from property of every kind, which, at the death of the decedent owner is subject to, or thereafter, for the purpose of distribution, is brought into this state and becomes subject to the jurisdiction of the courts of this state for distribution purposes, or which was owned by any decedent domiciled within the state at the time of the death of such decedent, even though the property of said decedent so domiciled was situated outside of the state." Rem. Comp. Stat., § 11203.

The objection first to be noticed is that the statute itself does not provide for an inheritance tax on property without the situs of the state. We shall not, however, follow counsel in their argument on the question. The provision is that, except as to real property located outside of the state, the tax imposed shall be assessed against and collected from property of every kind which was owned by the decedent domiciled within the state at the time of his death, "even though the property of said decedent so domiciled was situated outside of the state"; and we think it manifest that the statute was framed with studied care to reach such property; this, for the purpose undoubtedly, as suggested by the supreme court of New York in *In re Dingman's Estate,* 66 App. Div. 228, 72 N. Y. Supp. 694, of preventing a person, in contemplation of death, from placing his personal property in a foreign state where it might be distributed to his heirs or legatees without being subjected to the tax imposed by the state of his domicile.

A further objection is that, even if the statute contemplates the levy of an inheritance tax on property in a foreign state, the legislature was without power to so provide, because of want of jurisdiction over the

property. On this question, also, the courts seem to be divided in opinion. There is no question that, in so far as the power to levy a direct tax upon tangible property is concerned, the state is limited to property within its jurisdiction, but an inheritance tax is not a tax upon property as such. It is an impost or excise levied as a condition precedent to the transmission or transfer of property from the dead to the living, and the great majority of the courts hold, on the principle that the succession takes place in virtue of the laws of the place of domicile, that personal property is subject to an inheritance tax by the state in which its owner was domiciled at the time of his death, regardless of the actual location of the property or of the location of the evidence of its ownership. See *Frothingham v. Shaw,* 175 Mass. 59, 55 N. E. 623; *In re Hodges' Estate,* 170 Cal. 492, 150 Pac. 344; *Cornett's Executors v. Commonwealth,* 127 Va. 640, 105 S. E. 230, and the cases therein collected.

The first of the cited cases is typical of the others, and presents the precise question urged here. The decedent was domiciled in the state of Massachusetts at the time of his death, and left estate in that state, and stocks and bonds of foreign corporations and money in bank in the state of New York. The inheritance tax sought to be imposed by the state of Massachusetts on the property in the state of New York was attacked on the ground that such property was not property within the jurisdiction of the state of Massachusetts, and, if it was, the succession took place in virtue of the laws of New York and not of the laws of Massachusetts. Answering the first of the objections, the court said:

"In arriving at the amount of the tax the property within the jurisdiction of the Commonwealth is considered, and we see no reason for supposing that the legis-

lature intended to depart from the principle heretofore adopted, which regards personal property for the purposes of taxation as having a situs at the domicile of its owner. This is the general rule, Cooley on Taxation, (2d ed.) 372; and though it may and does lead to double taxation, that has not been accounted a sufficient objection to taxing personal property to the owner during his life at the place of his domicile, and we do not see that it is a sufficient objection to the imposition of succession taxes or administration duties under like circumstances after his death.''

To the second objection, it was said:

''The petitioners further contend that the succession took place by virtue of the law of New York. But it is settled that the succession to movable property is governed by the law of the owner's domicile at the time of his death. This, it has been often said, is the universal rule, and applies to movables wherever situated. . . . . . If there are movables in a foreign country, the law of the domicile is given an extra territorial effect by the courts of that country, and in a just and proper sense the succession is said to take place by force of and to be governed by the law of the domicile. Accordingly, it has been held that legacy and succession duties as such were payable at the place of domicile in respect to movable property wherever situated, because in such cases the succession or legacy took effect by virtue of the law of domicile.''

In *Blackstone v. Miller,* 188 U. S. 189, the antithesis of the question before us was presented, but the case is nevertheless instructive. The testator died domiciled in the state of Illinois. He left personal property, consisting of money and debts owing to him, in the state of New York, which property he bequeathed by will. The state of New York levied an inheritance tax on the property having its situs in that state, and the same property was taxed in the state of Illinois, the place of domicile. It was contended that the New York tax

was illegal, and passing upon this objection the court said:

"To come closer to the point, no one doubts that succession to a tangible chattel may be taxed wherever the property is found, and none the less that the law of the *situs* accepts its rules of succession from the law of the domicile, or that by the law of the domicile the chattel is part of a *universitas* and is taken into account again in the succession tax there. *Eidman v. Martinez,* 184 U. S. 578, 586, 587, 592. See *Mager v. Grima,* 8 How. 490, 493; *Coe v. Errol,* 116 U. S. 517, 524; *Pullman's Palace Car Co. v. Pennsylvania,* 141 U. S. 18, 22; *Magoun v. Illinois Trust & Savings Bank,* 170 U. S. 283; *New Orleans v. Stempel,* 175 U. S. 309; *Bristol v. Washington County,* 177 U. S. 133; and for state decisions *Matter of Estate of Romaine,* 127 N. Y. 80; *Callahan v. Woodbridge,* 171 Massachusetts 593; *Greves v. Shaw,* 173 Massachusetts 205; *Allen v. National State Bank,* 92 Maryland 509.

"No doubt this power on the part of two states to tax on different and more or less inconsistent principles, leads to some hardship. It may be regretted, also, that one and the same state should be seen taxing on the one hand according to the fact of power, and on the other, at the same time, according to the fiction that, in successions after death, *mobilia sequuntur personam* and domicile governs the whole. But these inconsistencies infringe no rule of constitutional law. *Coe v. Errol,* 116 U. S. 517, 524; *Knowlton v. Moore,* 178 U. S. 41."

See, also, *Bullen v. Wisconsin,* 240 U. S. 625.

The rule of these cases leaves no doubt, we think, as to the power of the state to levy an inheritance tax on movable personal property owned by a person who dies domiciled in this state, regardless of the situs of the property, or whether it is tangible or intangible in its nature.

The power would normally include the capital stock of banks whether national or state, but the adminis-

trator argues that stocks in national banks must be excluded because of the national banking act. This act (U. S. Rev. Statutes, § 5219) provides that the shares of any national bank owned by non-residents of any state shall be taxed in the city or town where the bank is located, and not elsewhere. But we think the statute refers to the imposition of general or annual taxes upon property levied in the lifetime of the owner and is without application to an inheritance tax. The latter tax, it must again be remembered, is not a property tax, but a tax on the right of inheritance, or the right of a person to pass his property to another after death. The specific property being only the medium by which the amount of the tax is measured, it has never been regarded as material whether the property was or was not exempt from general taxation. *Plummer v. Coler,* 178 U. S. 115; *Murdock v. Ward,* 178 U. S. 139.

On the same principle, the requirement that general taxes be levied at a particular place must be likewise immaterial, and it was so held in *Cornett's Executors v. Commonwealth,* 127 Va. 640, 105 S. E. 230.

On the third of the points of difference, the applicable part of the statute reads as follows:

"The inheritance tax shall be imposed on all estates subject to the operation of this act at the following rate: If passing to or for the use of a father, mother, husband, wife, lineal descendant, adopted child or lineal descendant of an adopted child, the tax shall be one per centum of any value not exceeding fifty thousand dollars; two per centum of any value in excess of fifty thousand dollars and not exceeding one hundred thousand dollars; three per centum of any value in excess of one hundred thousand dollars and not exceeding two hundred fifty thousand dollars; five per centum of any value in excess of two hundred fifty thousand dollars; *Provided, however,* That in the above cases, ten thousand dollars of the net value of any

estate shall be exempt from such duty or tax.'' Laws of 1917, p. 196, § 1, Rem. Comp. Stat., § 11202.

The question is whether the sum of ten thousand dollars, exempted by the proviso to the act, shall be taken from the whole of the amount passing and the remainder divided into blocks for the purpose of applying the graduated rules, or whether the amount passing shall first be divided into blocks and the exemption taken from the amount of the first of the blocks. The statute is not altogether free from doubt as to its meaning, but since the wording of the statute is that ten thousand dollars of the net value of the estate shall be exempt from the duty or tax, the legislative intent seems to have been to treat that much of the estate, when computing the tax, as if it had no existence. It would follow that the first of the suggested methods was the correct one, and we so hold. See *In re Ferrel's Estate,* 112 Wash. 231, 192 Pac. 10.

The fourth of the points of difference involves the question whether the state of Washington is entitled to collect an inheritance tax upon the legacies of five thousand dollars each bequeathed to Mary Sherwood and Warner Sherwood. There seems to be a dispute between the parties whether the record shows that these legacies were paid out of the estate in the state of California, or whether they are still payable out of the estate in the state of Washington. We cannot, however, think the fact material. Since the power of the state of Washington to levy a tax on the property in the state of California rests on the principle of domicile, the property is, for that purpose, equivalent to property within the state of Washington. In other words, the statute does not recognize any separation of the estate for the purposes of the inheritance tax, notwithstanding the property may be in part in a for-

eign state and part in the hands of a local administrator or executor. The tax is levied, we may again repeat, on the principle that it passes to the successor in virtue of the laws of the domicile of the deceased, and as property within the jurisdiction of the state of the domicile. It follows, we conclude, that the tax is collectible regardless of the place of residence of the legatees, and regardless of the actual situs of the property from which the legacy is paid.

Nor can we agree with the contention that the tax on these legacies is not payable out of the assets of the estate which are within the state of Washington. If the special legacies payable from the property within the state exhausted the property therein, there would have been a stronger foundation for the contention. But there is a large portion of the estate in each of the states which will pass to the same residuary legatees, and it can make no difference in the final result from which of the properties the tax is taken. There is but one estate, notwithstanding it lies within two jurisdictions, and in the final settlement seemingly these differences can be adjusted. But, be this as it may, taxes of whatever nature are obligations due the state, and with property within its jurisdiction sufficient to satisfy an obligation of this sort, the courts will not drive the state to a foreign jurisdiction to collect the obligation, so long as it does not thereby take the property of one person to satisfy the obligation of another; and here no such result will follow.

In our opinion the judgment of the trial court is without error, and it will stand affirmed.

PARKER, C. J., MAIN, HOLCOMB, TOLMAN, and MITCHELL, JJ., concur.

MACKINTOSH, J. (dissenting)—The state inheritance tax was not intended to be collected upon property not

received by the inheritors as we held in 113 Wash. 598, and should not be collected upon the amounts paid to the Federal government as estate taxes. I therefore dissent.

BRIDGES, J., concurs with MACKINTOSH, J.