MILLARD, C.J., STEINERT, MITCHELL, and HOLCOMB, JJ., dissent.
Mary H. Kennedy died October 16, 1928, leaving a nonintervention will, in which Edwin S. Goodwin was named as executor. By the terms of *Page 85 
the will, three specific bequests aggregating a thousand dollars were made, and the residue of the estate was left to Goodwin, the executor. The will was admitted to probate by the superior court of King county, and, on the filing of the inventory, an order of solvency was entered. The executor continued to administer the estate without further court proceeding, as authorized by the will.
The inventory, filed on November 8, 1928, showed an estate value of $5,085.59. This included two parcels of real estate, one appraised at two hundred dollars and another at three hundred. Household goods were appraised at fifty dollars, and the remainder of the estate, designated as liquid assets without further detail, at $4,335.59.
The executor having failed to return any inheritance tax to the state of Washington, the supervisor of the inheritance tax and escheat division, by authority of the state tax commission, on April 23, 1935, filed in the probate proceeding his findings fixing the amount of tax due from the estate to the state of Washington. The net tax due, as computed by the supervisor, after the deduction of debts owing by the decedent prior to death, funeral expenses, and the expenses of administration, was found to be $348.41, being ten per cent of the amounts severally going to the beneficiaries under the will, who, as it appears, were strangers to the blood and whose shares were, therefore, chargeable at that rate.
Notice of the findings of the supervisor having been given as provided by law, Paul Eugene Goss and Martha A. Goss, his wife, filed their objection to the findings in so far as they purported to establish the amount of the inheritance tax as a charge and lien upon the property of the estate of Mary H. Kennedy. Their objection had particular relation to lots 41 and *Page 86 
42, block 27, Madison Street Addition to the city of Seattle, being the parcel appraised at the value of three hundred dollars. They set forth in their objection that they had purchased these lots from the executor at the appraised value of three hundred dollars in cash, taking title subject to the payment of an outstanding mortgage in the sum of five hundred dollars.
They alleged that the deed from the executor contained the recital: "This sale of said premises is necessary in the process of settlement of the estate of said deceased," and that the proceeds from the sale were in fact used to pay in part the expenses of the administration and claims filed against the estate. They alleged that the supervisor, by his findings, had assessed the whole of the tax against the assets of the estate and sought to impress the tax as so fixed by him as a lien against the real property purchased by them from the executor, whereas the tax due should be properly assessed against the beneficiaries of the estate, that is to say, one hundred dollars against the three legatees and the remainder of the tax, claimed by them to be $176.75, against E.S. Goodwin, the executor, as a residuary legatee.
A hearing was had before the court and testimony taken upon the findings of the supervisor and the objection thereto, and an order made sustaining the objection, finding the amount of tax due from the estate to be $338.41, and assessing it, one hundred dollars against the specific legatees and $238.41 against Goodwin, the residuary legatee. The court also ordered and decreed that the real property purchased by the objectors from the executor was free from any lien for inheritance tax due to the state. From this order, the supervisor of the inheritance tax and escheat division appealed, by notice in open court, embodied in the order. *Page 87 
The supervisor assigns as error, first, the holding of the trial court that the real estate conveyed to the respondents was not subject to the state's lien for the payment of the inheritance tax; and, second, the finding that the sale of the real estate in question was necessary for payment of the expenses of administration. If the position of the supervisor on the first contention is correct, the findings of the trial court as to the necessity for the sale to pay expenses is not material.
[1] The controlling statutory provision is Rem. Rev. Stat., § 11201 [P.C. § 7051], which reads:
"All property within the jurisdiction of this state, and any interest therein, whether belonging to the inhabitants of this state or not, and whether tangible or intangible, which shall pass by will or by the statutes of inheritances of this or any other state, or by deed, grant, sale or gift made in contemplation of the death of the grantor or donor, or by deed, grant or sale or gift made or intended to take effect in possession or in enjoyment after the death of the grantor or donor to any person in trust, or otherwise, shall, for the use of the state, be subject to a tax as provided for in section 11202, after the payment of all debts owing by the decedent at the time of his death, the local and state taxes due from the estate prior to his death, and a reasonable sum for funeral expenses, monument or crypt, court costs, including cost of appraisement made for the purpose of assessing the inheritance tax, the fees of executors, administrators or trustees, reasonable attorney's fees, and family allowance not to exceed $1,000, and no other sum, but said debts shall not be deducted unless the same are allowed or established within the time provided by law, unless otherwise ordered by the judge or court of the proper county, and all administrators, executors and trustees, and any such grantee under a conveyance, and any such donee under a gift, made during the grantor's or donor's life, shall be respectively liable for all such taxes to be paid by them, with lawful interest *Page 88 
until the same shall have been paid. The inheritance tax shall be and remain a lien on such estate from the death of the decedent until paid."
This section was amended, by the addition of new matter about which we are not concerned here, by the 1935 session of the legislature. Laws of 1935, p. 768, § 104.
The supervisor relies upon the last sentence above quoted to sustain his contention that the inheritance tax remains a lien on the whole of the estate of the decedent until paid. The respondents contend, first, that the "estate" referred to is the net estate after allowable deductions for debts and expenses; and, secondly, that, since under the findings of the trial court the proceeds of the real estate purchased by the respondents were applied to the payment of deductible items of expense, this real estate was thereby discharged of the tax lien.
The respondents rest their contention upon the holding of this court that the inheritance tax is not an estate tax in the sense of a tax upon the corpus of the decedent's estate, but, rather, a tax upon the right of succession. In re Corbin's Estate,107 Wn. 424, 181 P. 910, 7 A.L.R. 685. It is urged that, since this is so, the tax is only upon the property passing to the beneficiaries, and the tax being so limited, the lien of the tax is likewise limited to the property passing to the beneficiaries.
Without going further afield for authority, we think the reasoning and conclusion reached in In re Sherwood's Estate,122 Wn. 648, 211 P. 734, disposes of the question, adversely to respondents' contention. The question in that case was whether an estate tax paid to the Federal government was a deductible expense, exempt from the state inheritance tax. After a thorough analysis of the theory underlying our inheritance *Page 89 
tax statute, the court, speaking through Judge Fullerton, reached the conclusion that the Federal tax was not a deductible expense because the statute did not specifically make it so. In reaching the conclusion that the beneficiaries were required, under the inheritance tax law as it then stood, to pay a tax upon property they did not receive, the court adverted to the generally accepted view that it is within the power of the legislature to declare, for the purposes of the tax, what shall be deemed to have been received by those succeeding to the property; that it is within the power of the legislature to say that the whole of the estate passes to the successor for the purposes of taxation although certain parts of it be devoted to uses which prevent it from actually passing.
"The state may, if it so chooses, take to itself the whole of such property, or it may take any part thereof less than the whole and direct the disposition of the remainder; and this without regard to the wishes or direction of the person who died possessed of it, and without regard to the claims of those to whom he has directed that it be given. Stated in another way, the state's power over such property is plenary, and its right to direct its disposition unlimited. It follows from this that those claiming the property must find the foundation for their claim, in the laws of the state. They can have no claim superior to that which such laws give them. . . .
"Counsel in their argument stress the words `All property . .. which shall pass,' and argue therefrom that the words, of necessity, mean such property as passes to the devisees, legatees or heirs of a deceased person's estate, and not such part of it as may be taken for other purposes. Attention is called, also, to the distinction between the various taxes levied on a decedent's estate, and it is pointed out that our tax is an inheritance tax, as distinguished from a death duty or estate tax, such as is the tax levied by the Federal government. But we cannot think the argument conclusive. It will be observed that the provision is *Page 90 
not that the tax shall be levied upon such property as shall pass to devisees, legatees or heirs, but is that it shall be levied upon such property as `shall pass by will, or by the statutes of inheritance,' and the other enumerated methods, making no mention of the persons to whom it shall pass. This, as we understand it, means that the tax may be levied on all property passing by the enumerated methods as distinguished from property which does not so pass, rather than upon property which passes to devisees, legatees, or heirs, as distinguished from like property which is disposed of for other uses. This conclusion is fortified, we think, by the provisions relating to the family allowance. This sum, as we have said, did not, at the time of the enactment of the law, and does not now, equal the sum properly allowable under the statutes for that purpose; yet it can hardly be successfully contended that a greater sum than the sum specified could be deducted before computing the tax, although, where a sum in excess of the limited sum is actually allowed for family expenses, it is manifest that the devisees, legatees or heirs of the estate do not receive it. The power to tax this excess sum must rest upon a principle which would permit the taxation of the sum paid as the Federal estate tax."
Now, if the legislature may require, as a condition to the succession, that the beneficiaries pay a tax on that portion of the estate which does not pass but is consumed by chargeable expense, it may, upon the same consideration, provide that, notwithstanding the allowance of certain deductible expenses in the computation of the tax, the amount of the tax when ascertained shall be a lien on the whole of the estate. The question here is whether, by the quoted language of § 11201, the legislature has done so. In view of the unambiguous language of the final sentence, it would seem a work of supererogation to elaborate the discussion of the question or cite authorities.
This section as a whole concerns itself with the disposition of the aggregate property left by a decedent, *Page 91 
which is commonly referred to as his estate. Not only is this the general tenor of the section, but the use of the word "estate" occurring in an earlier part of the section further clarifies the use of the word in the final sentence, if clarification be necessary. Reference is made to the payment of the tax as provided for in § 11202 [P.C. § 7053], after the payment of all debts owing by the decedent at the time of his death, the local and state taxes due from the "estate prior to his death," and other enumerated expenses. Clearly, the later words in the section, "such estate," can be held only to refer to the "estate prior to his death," as their antecedent.
The judgment of the trial court is reversed.
MAIN, TOLMAN, and BLAKE, JJ., concur.
BEALS, J., concurs in the result.