[No. 34181-2-I.    Division One.    October 23, 1995.]

*In the Matter of the Estate of* MARGARET O. BURNS.

THE DEPARTMENT OF SOCIAL AND HEALTH SERVICES, *Appellant*, v. MICHAEL L. OLVER, *Respondent*.

---

[13]*Pike*, 118 Wn.2d at 594-95.

[14]*Simon*, 120 Wn.2d at 199.

*Christine O. Gregoire, Attorney General*, and *M. Catherine Walsh, Assistant*, for appellant.

*Michael L. Olver*, for respondent.

*Jonathan P. Meier* on behalf of National Academy of Elder Law Attorneys (Washington Chapter), amicus curiae.

BECKER, J. — The Estate of Margaret Burns resists an attempt by the Department of Social and Health Services (DSHS) to recover medical care benefits paid to Burns before the effective date of Washington's estate recovery law, former RCW 43.20B.140. We hold that the event that triggered the law's application was the creation of Burns' estate, not her receipt of benefits. Therefore, the attempted application of the law is not retroactive, and the judgment in favor of the Estate must be reversed.

## I

Beginning in March 1986, Margaret Burns received medical care benefits from (DSHS). In 1987, Washington's

Legislature adopted a law authorizing DSHS to recover certain public assistance benefits from the beneficiary's estate:

(1) The department is authorized to recover the cost of medical care provided to a recipient who was sixty-five years or older, upon the recipient's death except:

(a) Where there is a surviving spouse; or

(b) Where there is a surviving child under twenty-one years of age or blind or disabled as defined in the state plan under Title XIX of the social security act; or

(c) To the extent of the first fifty thousand dollars of the estate value at the time of death, where there are surviving children other than as defined above, and not to exceed thirty-five percent of the remainder.

(2) The department may assert and enforce a claim against the estate of the deceased recipient for the debt in subsection (1) of this section, in accordance with chapter 11.40 RCW.

(3) The remedies in subsection (2) of this section are nonexclusive and upon the death of the recipient, the department shall have a lien for the debt in subsection (1) of this section. The lien attaches to the real property of which the deceased recipient was seized immediately before death. . . . Recovery under the lien shall be upon the sale or transfer of the subject property.

RCW 43.20B.140.[1]

The Legislature enacted the above statute by permission of a federal law, the Tax Equity and Fiscal Responsibility Act (TEFRA).[2] Since its enactment in 1982, TEFRA has allowed states several optional methods of access to the home equity of Medicaid recipients for the purpose of paying for nursing home services. The estate recovery

---

[1]RCW 43.20B.140 was repealed by Laws of 1994, ch. 21, § 2, effective July 1, 1994. An analogous recovery provision is now found at RCW 43.20B.080.

[2]Pub. L. 97-248, Title I, § 132(b), Sept. 3, 1982, codified at 42 U.S.C. § 1396p.

method selected by the Washington Legislature is one such method.[3]

Burns died in 1993. She left no surviving spouse or children under twenty-one. Under authority of the estate recovery law, DSHS filed a creditor's claim against the estate for $17,259.31, the amount of Burns' benefit payments dating back to 1986. The personal representative allowed the claim in the amount of $10,034.02 only, denying the estate's liability for any payments made between March 1986 and the adoption of the statute in 1987.

DSHS sued Burns' estate to recover the pre-1987 benefits. DSHS appeals an order granting summary judgment in favor of the Estate. The facts are not in dispute. The dispositive legal question is one involving retroactivity: whether the statute authorizes the State to recover the cost of benefits given as an outright grant to the decedent before the statute's effective date.

## II.

■ Because retroactivity is not favored in the law, a legislative enactment will not be construed to have retroactive effect unless its language requires this result.[4] The parties agree that RCW 43.20B.140 should not be construed to have retroactive effect, but they differ as to *how* the statute should be prospectively applied. DSHS maintains the statute operates prospectively so long as it is applied to estates arising after the date of the statute, regardless of when the benefits were paid. The Estate argues that any application of the law to recover pre-1987 benefit payments is retroactive.

■ A statutory application is retroactive if it would "impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties

---

[3]*See* 42 U.S.C.A. § 1396p(a)(1)-(2).

[4]*Landgraf v. USI Film Prods.*, 511 U.S. 244, 114 S. Ct. 1483, 1497, 128 L. Ed. 2d 229, 62 USLW 4255 (1994); *In re Cascade Fixture Co.*, 8 Wn.2d 263, 111 P.2d 991 (1941).

with respect to transactions already completed."[5] As the United States Supreme Court explained in the recent case of *Landgraf v. USI Film Products*, deciding whether a statute operates retroactively is "not always a simple or mechanical task."[6]

> The conclusion that a particular rule operates 'retroactively' comes at the end of a process of judgment concerning the nature and extent of the change in the law and the degree of connection between the operation of the new rule and the relevant past event."[7]

The observation in *Landgraf* that a retroactivity determination results from a process of judgment within which there is "room for disagreement"[8] is illustrated by the fact that two other courts that have addressed retroactivity challenges to similar estate recovery statutes have reached different results.[9]

When Burns received benefits from DSHS she did not contemplate that the benefits would ever have to be paid back. The Estate contends that DSHS is trying to impose a new duty, the duty of reimbursement, upon this past and completed transaction. The Estate and amicus, National Academy of Elder Law Attorneys (Washington Chapter) also argue that holding in favor of DSHS will upset the settled expectations of beneficiaries and their heirs.

██ ██ As the Court explained in *Landgraf*, "A statute

---

[5]*Landgraf*, 114 S. Ct. at 1505, *accord Pape v. Department of Labor & Indus.*, 43 Wn.2d 736, 740-41, 264 P.2d 241 (1953).

[6]*Landgraf*, 114 S. Ct. at 1498.

[7]*Landgraf*, 114 S. Ct. at 1499.

[8]*Landgraf*, 114 S. Ct. at 1499.

[9]*See Kizer v. Hanna*, 48 Cal. 3d 1, 767 P.2d 679, 255 Cal. Rptr. 412 (1989) (estate recovery law authorizes recovery of preenactment benefits); *Estate of Wood v. Arkansas Dep't of Human Servs.*, 319 Ark. 697, 894 S.W.2d 573 (1995) (contra).

does not operate 'retrospectively' merely because it . . . upsets expectations based in prior law."[10]

> Even uncontroversially prospective statutes may unsettle expectations and impose burdens on past conduct: a new prop-. erty tax or zoning regulation may upset the reasonable expectations that prompted those affected to acquire property; a new law banning gambling harms the person who had begun to construct a casino before the law's enactment or spent his life learning to count cards. . . . "If every time a man relied on existing law in arranging his affairs, he were made secure against any change in legal rules, the whole body of our law would be ossified forever"[.][11]

The question is not whether the application of the statute upsets estate plans or the expectations of heirs, but whether the application of the statute "attaches new legal consequences to events completed before its enactment."[12] To answer that question, the court must first identify the precipitating event which triggers application of the statute:

> A statute operates prospectively when the precipitating event for [its] application . . . occurs after the effective date of the statute, even though the precipitating event had its origin in a situation existing prior to the enactment of the statute.[13]

"[W]hether a particular application *is* retroactive" will depend "upon what one considers to be the determinative event by which retroactivity or prospectivity is to be calculated."[14] The critical inquiry in this regard is "what

---

[10]*Landgraf*, 114 S. Ct. at 1499.

[11]*Landgraf*, 114 S. Ct. at 1499 n.24 (quoting L. Fuller, *The Morality of the Law* 60 (1964)).

[12]*Landgraf*, 114 S. Ct. at 1499.

[13]*State v. Belgarde*, 119 Wn.2d 711, 722, 837 P.2d 599 (1992) (quoting *Aetna Life Ins. Co. v. Washington Life & Disability Ins. Guar. Ass'n*, 83 Wn.2d 523, 535, 520 P.2d 162 (1974)).

[14]*Kaiser Aluminum & Chem. Corp. v. Bonjorno*, 494 U.S. 827, 857, & n.3, 110 S. Ct. 1570, 108 L. Ed. 2d 842 (1990) (Scalia, J., concurring).

is the relevant activity that the rule regulates."[15]

We identify the precipitating event under the statute as the creation of the estate, not the receipt of benefits. Margaret Burns, not her estate, received the benefits. The recovery statute does not attach new legal consequences to that past completed transaction because it does not impose any liability on the recipient of the benefits. Rather, DSHS may only seek reimbursement from the recipient's estate. The plain language of the statute does not give rise to a right of recovery except "upon the death of the recipient." The "relevant activity" regulated by the statute is the distribution of the estate.

The DSHS lien does not impair any rights of Burns' heirs. Prospective heirs do not have any vested rights or settled expectations in the property of the estate until the estate is created.[16] Whether recovery of preenactment benefits impairs any rights that Margaret Burns herself possessed is a closer question. The Arkansas court, in *Estate of Wood*, perceived an effect upon "the nature of the ownership" of the prior payments:

> As we see the change in the law, it affected a vested interest in Ms. Wood. Prior to the enactment she had no reason to consider the medicaid payments as anything other than an outright entitlement. After the enactment it was as if she had a loan from DHS to be repaid from the assets of her estate. Although DHS argues that the operative date of the effect of the Act was the date of Ms. Wood's death, it is clear to us that it affected her property right prior to her death.[17]

Our contrary conclusion rests upon the distinction between the estate and the decedent, a distinction minimized by the Estate and left unanalyzed in the Arkansas case. As the Washington Supreme Court ex-

---

[15]*Landgraf*, 114 S. Ct. at 1524 (Scalia, J., concurring).

[16]RCW 11.04.250; *In re Estate of Wiltermood*, 78 Wn.2d 238, 472 P.2d 536 (1970).

[17]*Estate of Wood*, 319 Ark. at 701.

plained long ago in *In re Sherwood's Estate*,[18] a testator has no vested right to control the testamentary disposition of property because such disposition rests entirely upon legislative will:

> The right of the owner of property to direct what disposition shall be made of it after his death is not a natural right which follows from mere ownership. On the contrary, the right has its sanction in the laws of the state . . .. . The state may, if it so chooses, take to itself the whole of such property, or it may take any part thereof less than the whole and direct the disposition of the remainder; and this without regard to the wishes or direction of the person who died possessed of it, and without regard to the claims of those to whom he has directed that it be given. Stated in another way, the state's power over such property is plenary, and its right to direct its disposition unlimited.[19]

Because Burns had no property rights in the assets of her estate, assertion of the State's lien did not impair such rights.

According to *Landgraf*, one of the factors to be weighed in the "process of judgment" as to retroactivity is the "degree of connection between the operation of the new rule and a relevant past event."[20] There is not a high degree of connection between the State's claim ("the new rule") and the benefits (the "relevant past event"). The benefits were intended to pay for medical care for Margaret Burns, who otherwise would have had to deplete her own assets, including possibly the equity in her house. The operation of the State's right to recovery has not thwarted this objective. There is no evidence that the State's public assistance program was intended to augment Burns' assets for the benefit of distant heirs.

Another factor to consider under *Landgraf* is "the

---

[18]*In re Sherwood's Estate*, 122 Wash. 648, 655, 211 P. 734 (1922).

[19]*Sherwood's Estate*, 122 Wash. at 654-55.

[20]*Landgraf*, 114 S. Ct. at 1499.

nature and extent of the change in the law."[21]In this context, we reject the argument of amicus that the State's claim for pre-1987 benefits was a sudden and unexpected invasion of settled territory. The federal statute authorizing recoupment from estates has been in existence since 1982. Washington's 1987 law stated directly and clearly that DSHS was authorized to recover public assistance benefits from the estate of a recipient who had received them after age sixty-five. The "nature and extent of the change in the law" were not such that the State's application of its right to recovery should have surprised recipients of benefits or their heirs.

Amicus also argues that the State's application of the law is ultimately unfair and will create serious uncertainty in estate planning. It is difficult to perceive that the State's effort to recoup benefits is unfair to either Burns or her heirs. The recovery statute is part and parcel of a publicly funded assistance program.[22] That program allows elderly persons to receive medical care that they otherwise might not receive.[23] Viewed as a whole, the State's program did not deplete the assets of the Estate; indeed, it may have preserved the Estate. But for such programs, a recipient may have to sell her home in order to pay for medical care, or even call upon the future heirs for financial assistance. In cases where the decedent leaves a spouse or minor or disabled child, the benefits may never be recouped. We similarly reject the view that the law seriously hampered Burns' ability to effectively plan her estate. Burns could have replanned her estate or redistributed her assets after the law was adopted, if she so desired.

We conclude that RCW 43.20B.140 applies prospectively to estates arising after the effective date of the statute. Allowing DSHS to recover the cost of benefits paid before this date does not render the statute retroactive.

---

[21]*Landgraf*, 114 S. Ct. at 1499.

[22]*See* RCW 74.09.

[23]*See Kizer*, 767 P.2d at 681-82.

We reverse and remand with instructions to enter judgment for the State of Washington.

GROSSE, J., concurs.

AGID, J. (concurring) — I agree with the majority that former RCW 43.20B.140 is not a retroactive statute. I do not agree we need to weigh the factors for and against applying it because it is clear from statutory language that the statute operates prospectively only.

The majority acknowledges that, under the plain language of the statute, the event that triggers its application is the creation of the recipient's estate. Notwithstanding the plain language, it also discusses the effects of the statute on existing law and on the heirs'. expectations. In my view, both considering these factors and applying the "process of judgment" analysis found in *Landgraf v. USI Film Prods.*, 511 U.S. 244, 114 S. Ct. 1483, 1499, 128 L. Ed. 2d 229 (1994), is superfluous unless it is unclear from the statute what the Legislature intended the precipitating event to be.

The majority states that DSHS advocates a retroactive application of the statute. This formulation of the issue is not entirely precise. The parties agree the statute cannot be *applied* retroactively. What they do not agree on is whether the statute *operates* retroactively. The resolution of this issue hinges solely on the identification of the event that triggers the statute's application.

A statute is retroactive if it affects rights vested or actions taken before the statute became effective. We have concluded that receipt of benefits is not the precipitating event under former RCW 43.20B.140 because that event created no vested right in the recipient which would prevent the State from recovering money from his or her estate. Furthermore, the receipt of benefits created no liability for the recipient because disbursing assistance alone gave the State no authority to recoup the money. The statute authorizes recoupment only from estates cre-

ated after the effective date of the amendment where the recipient leaves no surviving spouse, minor child or disabled child. Thus, although the State's authority to recover assistance payments depends on an antecedent transaction, i.e., the receipt of benefits, the precipitating event is clearly the creation of the recipient's estate. As the majority allows, this can be gleaned from the plain language of the statute. In my view, our analysis should end there.

Review granted at 129 Wn.2d 1003 (1996).