In the Matter of the Transfer Tax upon the Estate of JENNIE WOOLWORTH, Deceased.

STATE TAX COMMISSION, Appellant; HELENA W. McCANN and Another, as Administrators, etc., of JENNIE WOOLWORTH, Deceased, Respondents.

Second Department, April 4, 1932.

*Harry M. Peyser* [*Percy D. Stoddart* and *Jerome M. Hirsch* with him on the brief], for the appellant.

*Charles H. Tuttle* [*John Burnet Nash, Paul Armitage* and *Edward A. Craighill, Jr.*, with him on the brief], for the respondents.

YOUNG, J. The decedent died May 21, 1924. Thereafter letters of administration were granted to the respondents. On October 28, 1925, an order was made by the surrogate authorizing the payment of commissions to the administrators upon all sums thus far received and paid out, determined to be at that time $78,317,938.48. These commissions amount to $3,132,757.54. On December 17, 1925, an order was made appointing a transfer tax appraiser. The appraiser filed his report on November 15, 1926. This report fixed the gross value of the estate at the time of decedent's death at $59,738,852.79, which included $692,150 of real property, and allowed deductions of $4,322,131.20, leaving a net estate of $55,416,721.59. Among the deductions allowed by this report were commissions of the administrators, amounting to $2,361,908.10. A *pro forma* order confirming this report and assessing the tax was made. The administrators appealed to the surrogate from this order upon the ground, in substance, that a deduction of the full amount of the commissions authorized by the surrogate's order should have been made. The surrogate sustained this appeal and modified the *pro forma* order by allowing a further deduction from the gross estate of $770,849.44, being the difference between the commissions authorized and paid to the administrators and the amount allowed and deducted by the appraiser in his report. The order appealed from was thereupon made. The decision is based upon the principle that a transfer tax may not be imposed upon that portion of the estate which goes to the executor or administrator in the form of commissions.

It will be observed that between the date of the decedent's death, on May 21, 1924, and the date of the order fixing the administrators' commissions, October 28, 1925, the personal estate had increased in value $19,271,235.69, and the further deduction of additional commissions made by the order appealed from results from this increase.

It is well settled that a transfer tax is not a tax upon property,

but upon the right of succession, and also that only the net value of the estate as of the date of the decedent's death is taxable and that no part of any future increase may be taxed. Thus, in *Matter of Penfold* (216 N. Y. 163) it was held that the transfer tax is upon the transfer by will of the property of which the decedent died " seized or possessed," and was " due and payable at the time of the transfer," that is, at the death of the decedent; that it accrues at that time and the amount of the tax is not affected by an increase or decrease in the clear market value of the estate between the date of the decedent's death and its subsequent distribution. The court in that case said (p. 167): " The transfer tax is not a tax upon property but upon the right of succession to property. (*Matter of Gihon*, 169 N. Y. 443; *Matter of Dows*, 167 N. Y. 227, 231.) It is upon the right to receive an estate or a portion thereof. The tax (so called) is the toll or impost appropriated to itself by the State for or in connection with the right of succession to property. It accrues, therefore, at the same time that the estate vests, that is upon the death of the decedent."

After reviewing numerous cases, the court further said (p. 170): " The necessity for certainty and uniformity in the time when the tax accrues and becomes due and payable required the adoption by the Legislature of a fixed and arbitrary rule. If, as claimed by the appellant, the tax is imposed upon the several bequests as choses in action, the value of which can only be determined at some date subsequent to the death of the decedent when on an accounting by the personal representative or otherwise the bequest is received in possession, it would lead to such confusion and uncertainty as to make the collection of the tax unnecessarily burdensome and at least to some extent impracticable."

In *Matter of Gihon* (169 N. Y. 443) it appeared that the probate of the will was contested and, pending such contest, a temporary administrator was appointed. The amount of his fees and disbursements was deducted from the value of the estate for transfer tax purposes. There were also deducted the commissions of certain trustees appointed by the will to take one-half of the residuary estate in trust, and also the amount of the Federal inheritance tax imposed under the War Revenue Act of June 13, 1898█ It was held that the deductions of the temporary administrator's fees and expenses, and also of the trustees' commissions, were proper, but that the Federal inheritance tax was not deductible. The court said (pp. 445, 446): " The transfer tax imposed by the laws of this State is a tax, not on the property of the estate, but on the succession

by the legatee, devisee, next of kin or heirs at law to the fortune of the deceased. Personal property does not pass directly from the deceased to his legatee or next of kin, but all that such legatee or next of kin takes is what may be coming to him from the estate on its distribution after settlement. The amount represented by the expenditures of the administrator or the expense of administration never passes to the legatee or next of kin, and, therefore, is not subject to the tax.    *    *    *

" By this will, one-half of the residuary estate is left in trust, the income to go to the testator's daughter during life, and upon her death the principal to her issue, or, in default of issue, over. The surrogate deducted the commissions of the trustees from the amount of the estate. There is a distinction that may be made between the commissions of executors or administrators whose appointment is an absolute essential to the lawful liquidation of an estate and those of trustees who are appointed solely for the protection of the property of the beneficiary, and it may be urged that such latter commissions should be considered as an expenditure for his benefit. Whatever force there may be in this view, we think the deduction of the trustees' commissions is justified and required by section 227 of the Tax Law itself, which prescribes that any legacy or devise to trustees in excess of their commissions allowed by law shall be taxable, thus necessarily implying that legal commissions shall be exempt."

In *Matter of Silliman* (79 App. Div. 98; affd., without opinion, 175 N. Y. 513) it appears that the executors and trustees under the will paid the transfer tax assessed by a decree of the Surrogate's Court. They subsequently sought a modification of the decree on the ground that, subsequent to the payment of the tax, the personal property had been increased by the conversion of certain real property sold under a power of sale in the will and that the executors were, therefore, entitled to an increase of $1,500 commissions, and also that, in assessing the transfer tax, no deduction had ever been made for the commissions upon the real and personal property to which the trustees under the will were entitled as such, which commissions amounted to $1,072.74. It appears that the decedent died on January 24, 1901, and on July 10, 1901, the transfer tax appraiser filed his report including two parcels of real property which were taxed. On September 12, 1901, the decree fixing the tax was entered, which was modified on December 18, 1901. On February 1, 1902, the two parcels of real property were sold under the power of sale. These parcels appeared in the schedules and

were appraised at the aggregate sum of $75,000. On March 20, 1902, an application was made to the surrogate of Kings county to allow deductions of additional commissions computed on the $75,000 received in the sale of the two parcels of real property. The application was denied by the surrogate, but his decree was reversed by this court and the deductions allowed, and our decision was affirmed by the Court of Appeals. Our decision in that case was based on *Matter of Gihon* (*supra*).

*Matter of Holland* (—— Misc. ——) was a case decided by the surrogate who decided the case at bar, and his decision in the present case is based upon his decision in the *Holland* case, where he made a similar ruling. In *Matter of Frauenthal* (—— Misc. ——) it was contended by the executors that their commissions were erroneously computed upon the value of the estate at the time of the decedent's death instead of upon the value thereof at the date of appraisal, and it was held by Surrogate O'BRIEN of New York county that the commissions were properly computed upon the value of the estate as of the decedent's death.

In *Matter of Monfort* (—— Misc. ——) it was held by the surrogate of Queens county that additional commissions based upon income received by the executors after the date of the testator's death were properly disallowed by the appraiser.

In *Matter of Boissevain* (137 Misc. 80) it was held that the appraiser properly disallowed a deduction from the present value of various life interests and annuities of the trustees' commissions computed on the present valuation of such interests, upon the ground that there was no authority for deducting trustees' commissions for receiving and paying over income to life tenants or annuitants, the court saying (pp. 81, 82): " While trustees' commissions are a proper deduction from the principal of the trust for the purpose of taxation (*Matter of Gihon*, 169 N. Y. 443), there is no authority for deducting trustees' commissions for receiving and paying over income to life tenants or annuitants.· Section 230 of the Tax Law (as amd. by Laws of 1928, chap. 549) provides that the value of life estates shall be determined by the methods employed by the Superintendent of Insurance and ' that the rate of interest for making such computation shall be five percentum per annum.' Section 231 (as amd. by Laws of 1921, chap. 476) provides that the Superintendent of Insurance shall ' determine the value of any such future or contingent estates * * * and certify the same to the surrogate or appraiser, and his certificate shall be conclusive evidence that the method of computation adopted therein is correct.'

" These provisions of law for the ˏvaluation of life estates are

necessarily arbitrary.   The legislative purpose was, no doubt, based upon the importance of presently determining, by some fair method, the value of the transfers.   In *Matter of White* (208 N. Y. 64) the validity of these provisions was upheld and the Court of Appeals determined that in the fixation of the value of the life interest the computation of the Superintendent of Insurance was conclusive even though the life tenant of the trust against whose transfer the tax was imposed had died prior to the appraisal.   In its reference to the rule prescribed in sections 230 and 231, the court said: ' This provision is mandatory in its language and the statute contains no other applicable or intended to apply to this case.   The language is clear and its meaning certain.   \*   \*   \* The rule promulgated by the Legislature effects certainty and uniformity   \*   \*   \*.'

" In the present proceeding the arbitrary method fixed by the Legislature must be accepted by the appraiser and the surrogate in the valuation of these life interests and annuities.   His method is not open to attack.   The Legislature has fixed five per cent as the rate of interest.   It might have provided for a greater or a lesser rate.   Presumably the allowance of commissions on income was taken into consideration by the Legislature in the fixation of that rate.   In any event the burden of computation is placed upon the Superintendent of Insurance.   The principal of the fund is fixed by the appraiser and certified to the Superintendent.   The allowance of commissions on income is interwoven in the method of computation.   If commissions were to be allowed it would involve separate computation as to their present value for it is not possible, in ascertaining the present value, to disregard the fact that these commissions accrue currently only as to income when received and when paid over or when they are fixed by a subsequent decree.   Nor is it possible to reconcile the provisions of section 226 of the Tax Law, which deal with the taxation of legacies to an executor or trustee in lieu of commissions, with the mandatory provisions of sections 230 and 231 referred to above. The application of section 226 is not directly involved here since there is no bequest in lieu of commissions.   The conclusion adopted here follows the rule which has received practical application without exception for over thirty years."

*Matter of White* (208 N. Y. 64), cited by Surrogate FOLEY in *Matter of Boissevain* (*supra*), involved a transfer tax upon a life estate where the life tenant had died before the appraisal, and it was held that the value of the life estate at the time of the decedent's death was the true test by which the tax should be measured, the court saying (pp. 67, 68): " At the commencement of the proceeding

to determine the tax, sections 220 and 221 of the Tax Law fixed the measure of the amount of the tax. Thereafter those sections were amended and section 221a was added. Under those sections the true test by which the tax is to be measured is the value of the interest or estate transferred at the time of the transfer thereof. (*Matter of Sloane*, 154 N. Y. 109.) The interest of the life beneficiary accrued on the death of the testatrix and its value as of the time of that occurrence is the sum to which the rate per centum as fixed by the statute should be applied, and under the provision within section 222 the tax then became due and payable. Inasmuch as it became due and payable at the time of the transfer or at the death of the testatrix, it would seem to follow, logically and necessarily, that the amount of it should be determined upon the conditions then existing. The Legislature enacted that such determination should be made through the use of the rule prescribed in and by the language of section 230 already quoted. This provision is mandatory in its language and the statute contains no other applicable or intended to apply to this case. The language is clear and its meaning certain. The court has not the power to declare that it was not intended to apply to this case and to modify the rule it states or create another. Indeed, we may well believe that the Legislature, when creating it, contemplated the precise conditions here existing. They are neither strange nor beyond reasonable expectation. It is commonly known that frequently the actual imposition of the tax is delayed by protracted litigation or other causes and that the lives of life tenants may fall far short of or extend beyond the periods fixed by the mortality tables. In harmony with such knowledge and indicative that it existed is the further clause of section 230 as follows: ' Where an estate for life or for years can be divested by the act or omission of the legatee or devisee it shall be taxed as if there were no possibility of such divesting.' "

In *Matter of Van Pelt* (63 Misc. 616, Surrogate KETCHAM of Kings county) it appears that the decedent died June 8, 1907, and on January 20, 1908, the transfer tax appraiser made his report, valuing the personal estate at about $96,000 and the real estate at about $2,600. There were three executors, and one commission was allowed on the appraised value of the personal estate, amounting to $1,149.76. Between the time of the testator's death and the date of issuing letters to the executors, the estate increased by the accrual of interest to more than $100,000. The surrogate held that each executor was entitled to commissions, and that the additional commissions should be deducted in fixing the value of the estate for transfer tax purposes, saying (p. 617): " No doubt, for the

purpose of the transfer tax, the estate must be valued as of the time of death; but whether each executor shall receive a full commission is to be determined by the value of the estate which they shall have administered.

" Under familiar methods of estimating deductions, it must be found that a triple commission is among the prospective expenses of this administration. The two additional commissions at the estimate made by the appraiser would be $2,299.52.

" The present order would make the legateees pay a tax upon this sum as an amount which passes to them under the decedent's will, when, as must be seen, it will never reach them."

In *Matter of Thomas* (39 Misc. 223) it was held that where an administratrix makes an advantageous compromise of a claim in favor of the estate against a third person, the transfer tax is to be imposed only upon what she received in settlement of the claim, and not upon its face value.

I have reviewed above all of the authorities cited in the briefs which appear to me to have any bearing upon the question involved in this appeal. It will be observed that the facts in the cases cited are different from those presented by the case at bar. It may be further observed that in none of the cases cited, with the exception of three decisions of the Surrogate's Court, was any claim made to a deduction of additional commissions computed and based upon an increase of the estate occurring subsequent to the decedent's death. In *Matter of Van Pelt,* one of the exceptions above referred to, a deduction was allowed of additional commissions resulting from such an increase, but even that case differs in its facts from the case at bar. There, additional commissions held properly deductible were not computed solely upon the increase, but resulted from an increase which permitted commissions to each of the three executors instead of a single commission to all. This difference in facts, however, does not, in my opinion, result in a distinction in principle. If the ruling of that case is sound, it would seem to be applicable to the case at bar, because it allowed a deduction of commissions resulting from an increase occurring since the transfer, and it is of no importance that the increase was small and that the ruling produced what may be said to have been a fair and just result.

Although the statute has been since modified so as to specify deductions, it should also be observed that at the date of decedent's death and when the tax was assessed herein there was no statutory provision expressly governing or pointing out the deductions to be made in determining the taxable estate. These deductions are the result of the construction given by the courts to the words of the

statute, "clear market value." (See Tax Law, § 220, subd. 8, as amd. by Laws of 1922, chap. 430; since revised by Laws of 1928, chap. 330, §§ 1, 3, as Tax Law, § 220, subd. 6; since in part superseded by Tax Law, § 249-n, added by Laws of 1930, chap. 710, as amd. by Laws of 1932, chaps. 322, 326; Id. § 249-s, subd. 1, added by Laws of 1930, chap. 710, as amd. by Laws of 1931, chap. 134; Id. § 249-mm, as added by Laws of 1930, chap. 710.) Neither the Court of Appeals nor the Appellate Division has ever had before it the precise question involved in the case at bar, and the language of the opinions above quoted from those courts should be read in the light of the particular facts involved. The contention of the respondents, of course, is that all debts, funeral expenses and expenses of administration, including all commissions, those based upon the appraised value as well as those resulting from the increase, are not part of the estate passing by the transfer, and are, therefore, deductible in arriving at the net value of the estate or its clear market value. This assertion is based upon the general language of some of the opinions above quoted, to the effect that commissions do not pass to the beneficiaries and are not taxable but must be deducted in determining the net value of the estate.

It is well settled that no increase in the value of the estate occurring subsequent to the transfer is taxable. It would seem to follow naturally and logically that any increase or decrease cannot affect the amount of deductions based thereupon, but that such deductions should be based upon the value of the estate passing at the time of the decedent's death. Since the language of the statute, "clear market value," has been defined to mean the net amount or value of the estate at the decedent's death, after making the deductions above referred to, it would seem to me to follow logically that the commissions to be deducted, in order to arrive at the net estate, are the commissions based upon the gross value of the estate as appraised; because, how can commissions based upon a subsequent increase in the value of the property, which increase is no part of the taxable estate transferred, be held to be an expense of the administration of such estate? In other words, these commissions on the increase are an expense having no basis in the property transferred, but arising solely from property not transferred by the decedent's death and acquired since the transfer, and, therefore, not subject to taxation. Respondents' contention is that, because these commissions on the increased value of the estate do not pass by the transfer, they are not, therefore, taxable and must be deducted. It is quite true that these commissions do not pass by the transfer, but neither did the increase upon which they are based pass by such transfer. It accrued and

became the property of the beneficiaries subsequent to the transfer, and it would seem that any commissions based upon this increase are an expense to be borne by the beneficiaries of the estate and not deductible from the appraised value. To deduct these additional commissions from the appraised gross value of the estate at the time of decedent's death would result in relieving from taxation a portion of the estate which did pass to the transferees. Therefore, in the case at bar, more than three-quarters of a million dollars will, if this order be upheld, escape taxation, with the result of unjustly increasing the burdens upon other taxpayers. Such a result seems to me unfair and unjust to the State as well as to other taxpayers and should not be upheld unless some controlling authority compels it. I may add that, if respondents' contention is sound, a decrease in the value of the estate would be governed by the same principle, and would necessitate a correction of the tax order by reducing the amount of commissions to be deducted, and thereby increasing the tax. In other words, we may not construe this statute in the taxpayer's favor solely, but must apply the same principle for the benefit of the State. Such a result would be equally unjust and would impose upon such an estate an unequal and unfair burden. I am convinced, therefore, that commissions should, for transfer tax purposes, be computed on the appraised value of the estate transferred and are not affected by any subsequent increase or decrease in the value of the estate.

The order of the Surrogate's Court of Nassau county dated February 17, 1931, should be reversed on the law, the deductions of additional commissions disallowed, the deduction determined by the appraiser allowed, and the *pro forma* order reinstated, with costs, payable out of the estate, to all parties filing briefs.

LAZANSKY, P. J., KAPPER, HAGARTY and CARSWELL, JJ., concur.

Order of the Surrogate's Court of Nassau county dated February 17, 1931, reversed on the law, the deductions of additional commissions disallowed, the deduction determined by the appraiser allowed, and the *pro forma* order reinstated, with costs, payable out of the estate, to all parties filing briefs.