# IN RE ESTATE OF HERBERT H. BIGELOW.
## STATE v. HELEN BIGELOW GALLOWAY AND OTHERS.[1]

February 19, 1937.

No. 31,134.

*Harry H. Peterson,* Attorney General, *Harry W. Oehler,* Assistant Attorney General, and *Roy C. Smelker,* Special Assistant Attorney General, for the State.

*Oppenheimer, Dickson, Hodgson, Brown & Donnelly,* for respondent executors.

HOLT, JUSTICE.

The opinion heretofore filed herein is withdrawn, being incorrect in its statement of facts, and the following substituted in place thereof.

The state appeals from an order of the probate court of Ramsey county denying the application of the attorney general to impose an inheritance or succession tax upon "a gain of $2,822.50 on assets sold to pay expenses" of the administration of the estate of Herbert

[1] Reported in 271 N. W. 459.

H. Bigelow, deceased. There were four residuary legatees upon whom a succession tax of $227,000 has been imposed. This, with the federal transfer tax of $211,359.25, other taxes, funeral expenses, allowed claims, and expenses of administration of the estate, necessitated the selling of its assets so as to raise over $500,000 in cash. Among the assets sold were certain municipal bonds whose market value had so increased, after testator's death, that $2,822.50 more was realized from their sale than the sum at which appraised for the purpose of fixing the succession tax. The probate court refused to impose a succession tax upon this gain. The state contends that this was a capital gain in the estate resulting from the necessity of selling some of the assets in order to complete the administration and distribute the residue to the legatees. We think this contention of the state, if sound, really must go further in order to avoid discrimination, and require that any gain in the market value of a decedent's property between the day of his death and the time of its distribution to his heirs, devisees, or legatees is subject to an additional succession tax. Such a result cannot be sustained as a· practical proposition.

In State ex rel. Gage v. Probate Court, 112 Minn. 279, 285, 128 N. W. 18, 20, the court in construing 1 Mason Minn. St. 1927, §§ 2292, 2293, 2294, and 2306, with reference to the time at which the value of the property transferred by the death of its owner is to be determined for the purpose of imposing a succession tax upon the ones receiving it, said:

"We agree with the contention of relator's counsel that, no matter when the valuation takes place, it is to be made as of the date of testator's death."

The amendments made by L. 1911, c. 209, do not appear to affect the question now presented. In State ex rel. Hilton v. Probate Court, 143 Minn. 77, 80, 172 N. W. 902, 903, the court said:

"True, theoretically the transfer occurs upon the death of decedent, when it is accomplished either by will or the intestate law. And the act provides that the basis of computing the tax shall be upon the money value of the portion received as of the time of decedent's

death, or as soon thereafter as it is practicable to ascertain its then true value."

The death transfers the property of a decedent to his heirs, devisees, or legatees subject to such claims as may be asserted against the same in the course of administration. For the privilege of receiving the residue the succession tax is imposed. If after decedent's death there is a gain in the estate, whether from increase in market value or from interest, dividends, rent, or income from the property, such gain or enhancement occurred after the transfer to the heirs, devisees, or legatees took place, and hence no succession tax attaches thereto unless there is an express provision in the law to that effect, as appears to be the case in Montana. In re Touhy's Estate, 35 Mont. 431, 90 P. 170. The entire plan of the succession tax is not a tax on the property a decedent leaves but upon the privilege those have who receive it. The privilege is computed upon the value of the property received at the time of the transfer, to-wit, the death. Of course the exact amount transferred is not known until the administration of the estate is completed. Claims allowed against the estate, taxes, funeral expenses, and expenses of administration are deductible—subject to which the heirs, devisees, and legatees take. It is clear that had there been no necessity of selling these municipal bonds, or had they been specifically bequeathed to a legatee, and there had been cash and other assets sufficient to pay all the expenses of administration and claims allowed, surely the state would not have contended for an additional succession tax because of the rise in the market value of the bequeathed bonds after testator's death. Nor could there have been a reduction in the tax no matter how much their decrease in market value between testator's death and the decree of distribution, if these bonds had been specifically bequeathed to a legatee. In Massachusetts, at a time when there were less specific statutes than ours touching the question here for decision, it was held that the tax should be computed upon the value of the property transferred as of the date of the owner's death, the right of succession then occurring, and that gain therein afterward was not subject to the tax. Hooper v. Bradford,

178 Mass. 95, 59 N. E. 678. Our succession tax statutes are in much patterned after those of New York, and in that state the law seems well established that the tax is computed and imposed upon the appraised money value of the estate of a person at the time of his death, deducting the necessary expenses of administration, and that the increase in value of the property in the estate either from income or otherwise is not subject to a succession tax. Matter of Vassar, 127 N. Y. 1, 27 N. E. 394; Matter of Penfold, 216 N. Y. 163, 110 N. E. 497; Matter of Hazard, 228 N. Y. 26, 126 N. E. 345; In re Woolworth's Estate, 235 App. Div. 160, 256 N. Y. S. 839. In the last cited case there is a full review of previous New York decisions. To the same effect is In re Williamson's Estate, 153 Pa. 508, 26 A. 246.

The state relies on the decision of In re Estate of Bowlin, 189 Minn. 196, 248 N. W. 741, approving and following In re Ferguson's Estate, 113 Wash. 598, 600, 194 P. 771, 772, 13 A. L. R. 122. In the Ferguson decision the court recognized the general rule—

"that the tax is to be measured by the value of the estate as of the death of the decedent, not as of the date of the probate of the will, the distribution of the estate, or any other proceeding, looking toward the administration of the estate and the collection of the tax."

The court then says of the rule [113 Wash. 600]:

"It does not, however, cover the situation presented by the facts in the case before us. Here the devisees under the will did not receive the property which was inventoried, but received, in lieu of that, cash which was the balance remaining after the real property of the estate had been sold to meet the debts and expenses of the estate and the expense of administration."

So we held in In re Estate of Bowlin, 189 Minn. 196, 248 N. W. 741, that the tax is to be computed after deducting the expenses of administration from the value at which the estate was appraised for the purpose of determining the tax. It was considered that the loss sustained by reason of being compelled to sell assets of the

estate, consisting mostly of stocks and bonds, on a falling market or in order to close the estate, was an administration expense, and deductible as such. We do not think a decrease in the value of an estate of a decedent occurring in the due course of the administration thereof in a probate court has the same effect on the succession tax to be paid by the heirs, devisees, or legatees as does an increase in the value of the estate during its administration. The beneficiaries of the estate pay the tax on the clear money value of the property transferred to them as of the time of decedent's death. This requires the deduction of the necessary administration expenses from the appraised value where the tax relates to residuary legatees. Where a beneficiary takes specific real or personal property, the tax is of course computed upon the value of such property at the time of decedent's death, and neither rise nor fall of the market value thereafter affects the tax. So it would be if there be a money bequest. The tax here in question concerns residuary legatees. It should be arrived at as nearly as possible on the same basis as that on specific legacies, on the value of what they received as of the time of decedent's death. Had these legatees paid the specific legacies, debts, and expenses of administration, it is clear that the property in the estate including these bonds would have passed to them as appraised for the purpose of imposing the tax, and gain or loss in the market value thereafter would not have affected the tax. It is only when there is a loss in the residuary estate because of the necessity in the course of administration to sell some of the estate at less than the appraisal for the purpose of imposing the tax that such loss may be considered administration expense. However, when the estate under administration gains from rise in the market value of its property or from efficient handling thereof, so that it exceeds the appraised value at decedent's death, such gain or increase in value belongs to the residuary legatees and is not subject to any additional succession tax.

The order is affirmed.

MR. JUSTICE PETERSON, not having been a member of the court when the case was argued and submitted, took no part in its consideration or decision.