## AMERICAN NATIONAL BANK AND TRUST COMPANY AND ANOTHER, EXECUTORS OF THE ESTATE OF FORREST A. NUTTING, AND OTHERS v. RUFUS T. LOGAN.

176 N. W. (2d) 91.

March 6, 1970—No. 41778.

` *Douglas M. Head,* Attorney General, *Richard H. Kyle,* Solicitor General, and *Don G. Paterick* and *Gerald T. Laurie,* Special Assistant Attorneys General, for appellant.

*Maun, Hazel, Green, Hayes, Simon & Aretz, John C. Johanneson,* and *Richard D. Donohoo,* for respondents.

OTIS, JUSTICE.

The issue here presented is whether Federal and state income taxes payable upon the collection of accounts receivable by the executors of an estate are deductible in computing the state inheritance taxes assessed against the beneficiaries. The commissioner of taxation denied the deductions. In an action brought by the executors and beneficiaries in the district court, the de-

ductions were allowed. The commissioner appeals from that determination.

The parties have stipulated to the facts. Forrest A. Nutting died on August 26, 1961. His wife and daughters were his sole beneficiaries. Mr. Nutting was the proprietor of a business dealing in dairy products. Following his death, the executors collected on behalf of his estate the following accounts receivable: In 1961, $327,945.57; in 1962, $138,000.19; in 1963, $9,235.35. Since for tax purposes the company was on a cash basis, Federal and state income taxes did not become payable until after Nutting's death, when the following amounts were assessed: The Federal tax in 1961 was $151,609.79; in 1962, $62,687.11; in 1963, $2,787.36. The Minnesota income tax for 1961 was $21,031.94.

The parties reached a composition agreement fixing the inheritance tax at $80,685.42, but reserved the estate's right to litigate the question of whether the estate was entitled to a reduction of the inheritance tax in the amount of $20,788.32 for the state and Federal income taxes paid by the executors.

The district court held that the estate was entitled to judgment in the sum of $25,772.52. In an accompanying memorandum, the court stated that under Minn. St. 291.11, subd. 6, the legislature indicated an intention to allow deductions of this kind and cited as authority In re Estate of Bowlin, 189 Minn. 196, 248 N. W. 741; and Sevcik v. Commr. of Taxation, 257 Minn. 92, 100 N. W. (2d) 678.[1] The court was of the opinion that the tax was on the property received by beneficiaries rather than on the property which the estate had for distribution.

---

[1] In so far as it is relevant, Minn. St. 291.11, subd. 6, provides as follows: "In estimating the value of any estate or interest in property, to the beneficial enjoyment or possession whereof there are persons or corporations presently entitled thereto, no allowance shall be made on account of any contingent encumbrance thereon, nor on account of any contingency upon the happening of which the estate or property, or some part thereof or interest therein might be abridged, defeated, or diminished * * *."

The commissioner assigns a number of grounds for reversal. He argues that the beneficiaries would not be entitled to deduct their income taxes if the accounts receivable had been transferred in kind. The deductions enumerated in § 291.07 are exclusive and do not include taxes which have not yet accrued. It is the commissioner's further contention that the payment of income taxes by the executors is not a contingent encumbrance or contingency within the meaning of § 291.11, subd. 6. Those terms, he submits, are technical conveyancing terms which apply only to the quantum of the estate and not to its pecuniary value. For this proposition the commissioner cites as authority Estate of Willis, 34 Cal. (2d) 782, 215 P. (2d) 453.

The commissioner further argues that there must be finality in determining tax liability not possible if inheritance taxes cannot be computed until accounts receivable have all been collected or written off, a process which may, and here did, consume several years. It is asserted that income taxes are not contingent in any event since the tax liability "was as certain to arise as the receivables were certain to be collected." This argument cuts both ways. The very certainty of the tax liability following the decedent's death inevitably diminishes the value of his bequest, a factor which apparently the appraisers did not take into consideration.

Finally, it is contended that the liability for income taxes could not have been contemplated by the legislature as a deduction because the inheritance tax law was enacted in 1911, and the Federal income tax law was not adopted until 1913. The commissioner points out that the relief sought has not been entirely overlooked by the legislature since allowances have been made in the income tax law for amounts paid for inheritance taxes. In that connection, the commissioner predicts an impossible impasse in computing taxes if inheritance taxes cannot be determined until the income tax is fixed, and the income tax cannot be computed unless the inheritance tax is known.

We have considered all of these contentions and are of the

opinion that on the authority of our prior decisions it was proper to find a legislative intent to deduct income taxes payable by the executors in computing the net value of bequests for inheritance tax purposes. We need not decide whether this is technically a contingent encumbrance since it seems clear that the income taxes are, in any event, a deductible expense of administration under Minn. St. 1961, § 291.07(2).

Three decisions bearing on the issues have been extensively discussed in the briefs. In re Estate of Bowlin, 189 Minn. 196, 248 N. W. 741, was a case where decedent left some 40 specific bequests and the liquidation of assets was necessary to satisfy the legacies. To accomplish this end, the estate was required to sell securities at a loss of some $35,000. The question was whether the residuary legatees were required to pay an inheritance tax on the appraised value of their legacies as of the date of death or whether the tax should have been based on what the legatees actually received after the loss was deducted. We held that under these circumstances the tax should be computed on the basis of the amount actually realized following the forced sale. The court recognized that ordinary shrinkage in value would not constitute a deduction for inheritance tax purposes, but held that where a sale of this kind was required to execute the terms of the will it would be unjust to base a tax on inventory value rather than on what the residuary legatees actually received. When the converse situation arose in In re Estate of Bigelow, 199 Minn. 239, 271 N. W. 459, we held that the gain realized on sales made necessary in the course of administration was not taxable to beneficiaries. In so doing, we pointed out that the problem would not have arisen had there been an ordinary increment or depreciation in value absent an actual sale during administration. We characterized the loss sustained in the Bowlin case as an administration expense and deductible as such. Had the residuary legatees in the Bigelow case paid off the specific bequests and taken the residue in kind, we noted that

no gain would have been realized for tax purposes although the estate had increased in value.

"* * * It is only when there is a loss in the residuary estate because of the necessity in the course of administration to sell some of the estate at less than the appraisal for the purpose of imposing the tax that such loss may be considered administration expense." 199 Minn. 243, 271 N. W. 461.

Finally, Sevcik v. Commr. of Taxation, 257 Minn. 92, 100 N. W. (2d) 678, held that expenses of last illness, funeral expenses, and the widow's allowance were properly deductible before assessing an inheritance tax, notwithstanding the fact that the property passed by joint tenancy without being administered through the probate court. We again reiterated the familiar principle that "the inheritance tax is in this state a succession tax on the amount that is in fact received by the beneficiary." 257 Minn. 107, 100 N. W. (2d) 689.

Whether the Bowlin and Bigelow cases can be reconciled on the basis of abstract logic, we do not decide. They do, however, find a legislative intent not to penalize beneficiaries for losses sustained in meeting necessary obligations in the process of administration. Had decedent kept his books on an accrual basis, the tax would have been paid or payable at the time of his death and would clearly have diminished the value of the bequests by that amount. On the other side of the coin, the state has argued that a specific assignment of the accounts receivable could have been made to the beneficiaries, in which case the obligation to pay the tax would have fallen on them individually and in widely differing amounts according to the situation of the particular taxpayer. Be that as it may, we do not believe that the legislature intended accounts receivable in an estate to be assigned a value on the date of death for inheritance tax purposes at a figure which does not take into account the inevitability of substantial income taxes such as were imposed here, taxes which, as we have

indicated, were as certain to be imposed as the receivables were certain to be collected.

Although the thrust of the trial court's decision was based on its construction of a contingent encumbrance under Minn. St. 291.11, and the estate relies to some extent on § 291.07, authorizing deductions for taxes which have accrued, we think the cases cited support a holding that state and Federal income taxes are legitimate expenses of administration within the meaning of Minn. St. 1961, § 291.07(2).[2]

For the reasons stated, the judgment of the district court is affirmed.

Affirmed.

MR. JUSTICE ROGOSHESKE took no part in the consideration or decision of this case.

---

[2] That statute, now Minn. St. 291.07, subd. 1(2), was amended by L. 1965, c. 249, to read *"probate* administration expenses." (Italics supplied.)