[No. 16133. Department One. January 4, 1921.]

*In the Matter of the Estate of* THOMAS J. FERGUSON.[1]

TAXATION (225, 229)—INHERITANCE TAX — COMPUTATION — AP-PRAISED VALUE OF REAL ESTATE SOLD·TO PAY DEBTS AT LESS THAN APPRAISEMENT—STATUTES—CONSTRUCTION. Where the court has or-dered, in the settlement of an estate, the sale of real property to pay debts at less than its appraised value, the inheritance tax, which is by Rem. Code, §§ 9182, 9192, made a lien on the property which will go to the devisees and legatees, is to be computed upon the ap-praised value of the property not disposed of, and upon the prices received for the lands sold, basing the tax on the amount actually received by the devisee and not on the appraised value.

Appeal from an order of the superior court for Chelan county, Grimshaw, J., entered April 13, 1920, determining the amount of an inheritance tax, after a hearing before the court. Affirmed.

*J. M. Thatcher* and *Geo. G. Hannan,* for appellant.
*Fred Kemp,* for respondents.

MACKINTOSH, J.—This case calls for the determina-tion of the amount of the inheritance tax due to the state of Washington.

[1]Reported in 194 Pac. 771.

September 28, 1913, Thomas J. Ferguson died, leaving a will, which was duly probated; and the estate, which consists of real property in Okanogan and Grant counties, was inventoried, and the value fixed by the appraisers at $19,947.25. To this appraisement, no objections were made. The estate was in process of administration for six years, during which time the executors, under order of the court, at different times, made sales of some of the real property at prices less than those in the original appraisement, these sales being made necessary to pay the debts and liabilities of the estate for which proper claims had been made. After the payment of all these debts and liabilities and expenses of administration, there remained the sum of $2,439.27. The executors, in their final account, asked that the inheritance tax be computed upon this amount; the state tax commissioner asked that the tax be computed upon the appraised value of $19,947.25, less the debts and cost of administration. From a ruling adverse to the tax commissioner, he has appealed.

The question in this case is whether an inheritance tax is to be computed upon the appraised value of the estate where, in order to pay the debts of the estate, it has been necessary to sell some of the real property at a less value than that fixed by the appraisement.

Section 9182, Rem. Code, provides:

" . . . The inheritance tax shall be and remain a lien on such estate from the death of the decedent until paid."

Section 9192, Rem. Code, provides:

"All taxes imposed by this chapter shall be payable to the state treasurer, who shall issue his receipt therefor in duplicate, one of which shall be filed with the state board of tax commissioners, and those taxes which are made payable by executors, administrators or trustees, shall be paid within fifteen months from

the death of the testator or intestate, or within fifteen months from assuming the trust by such trustee, unless a longer period is fixed by the court. All taxes not paid within the time prescribed in this section shall draw interest at the legal rate until paid.''

By the act of 1917, the interest rate was raised to eight per cent.

The general rule is, as stated by Ross on Inheritance Taxation, at § 259:

''Since inheritance taxes are imposed upon the succession rather than upon the property, and the succession takes place at the time of the decedent's death, it follows that the tax is to be measured by the value of the estate as of the death of the decedent, not as of the date of the probate of the will, the distribution of the estate, or any other proceeding, looking toward the administration of the estate and the collection of the tax. The appraisement is to be made and the tax fixed according to the value of the property as of the day of the decedent's death, without regard to subsequent depreciation, appreciation, or income, unless, as is the case in Montana and perhaps some other states, the statute expressly requires the increase to be taken into consideration. This general rule has been recognized by the courts, although not clearly expressed or required by the statutes.''

See, also, Gleason & Otis on Inheritance Taxation, pages 30, 31; also, the cases of *In re Penfold's Estate,* 216 N. Y. 163, 110 N. E. 497, Ann. Cas. 1916A 783; *In re Ottman's Estate,* 166 N. Y. Supp. 1078; *Hooper v. Bradford,* 178 Mass. 95, 59 N. E. 678; *In re Hite's Estate,* 159 Cal. 392, 113 Pac. 1072, Ann. Cas. 1912C 1014, 32 L. R. A. 1167; *In re Brown's Estate,* 54 Utah 73, 179 Pac. 652; *Hanberg v. Morgan,* 263 Ill. 616, 105 N. E. 720; 26 R. C. L., p. 232.

With this rule we are in full accord. It does not, however, cover the situation presented by the facts in the case before us. Here the devisees under the will

did not receive the property which was inventoried, but received, in lieu of that, cash which was the balance remaining after the real property of the estate had been sold to meet the debts and expenses of the estate and the expense of administration. If the rule laid down in the foregoing authorities is applicable to the facts such as presented in this case, it might often result that devisees and legatees would be compelled, before receiving their devises and legacies, to pay to the state, as inheritance taxes, a sum greater than the amount they were receiving under the will; for, if the tax in all cases is to be collected according to the appraised value, and, during the administration, it was necessary to dispose of the property at prices a great deal less than the appraisement, what remained for distribution might be exceeded in amount by the inheritance tax figured upon the appraisement.

It would seem that, where the court has ordered, in the settlement of an estate, that real property of the estate be disposed of, in order to accomplish the settlement of the estate, at prices differing from those appearing in the inventory, the difference between the inventoried amounts and the proceeds received from the sales, if they are less than the appraisement, should be regarded as part of the expenses of administration, and that the amount actually received by the devisee or legatee should be the basis for the collection of the tax. Where there has been no change in the character of an estate from the time of its appraisement until its distribution, all parties, of course, would be bound by the appraised value, and the tax should be collected thereon without considering the increase or diminution of the value during the time of administration.

This interpretation of the act is fortified by our prior decisions interpreting the act. We have held, from the

first case which had this subject under examination, that the inheritance tax is not on the estate but on the right to inherit. *State v. Clark*, 30 Wash. 439, 71 Pac. 20. In *In re Clark's Estate*, 37 Wash. 671, 80 Pac. 267, we said:

"The inheritance tax is payable out of the legacies, and is chargeable to the individual legatees. The court cannot compel one legatee to pay the inheritance tax due from another. . . ."

In *In re White's Estate*, 42 Wash. 360, 84 Pac. 831, we held that the act imposed a tax on the right to succession, and in *In re Stixrud's Estate*, 58 Wash. 339, 109 Pac. 343, Ann. Cas. 1912 A 850, 33 L. R. A. (N. S.) 632, it was held, without qualification, that the act imposed a tax not upon the property but upon the right or privilege of inheriting it. In *In re Lotzgesell's Estate*, 62 Wash. 352, 113 Pac. 1105, the court said the inheritance tax is not a debt of the testator but is a charge against the legatees; and in *In re Corbin's Estate*, 107 Wash. 424, 181 Pac. 910, Judge Tolman, speaking for the court, said:

"If, then, as we have already held, the tax is one upon the right to receive, to be paid, in the last analysis by the legatee, and if one legatee cannot be held to pay the tax of another, does it not likewise follow that the amount of the tax to be paid by any one legatee must be determined from the amount of the legacy received by him, and not, either in whole or in part from the amount which may be received by others? We are convinced that a fair reading of the statute itself leads to that conclusion; and every expression of this court during the eighteen years that it has been the law lends support to that position. Not only so, but the reasoning of other courts in construing similar laws, while not wholly harmonious, abundantly supports our conclusions. . . . We conclude, therefore, that the legislative intent was that each legacy

should be considered as a separate entity and taxed as such at the statutory rate. . . ."

In *In re Ferrel's Estate,* 112 Wash. 231, 192 Pac. 10, reviewing these cases, the court used this language:

"We have uniformly held that the inheritance tax provided for in this state is a succession tax on distributive shares upon devolution of an estate, holding in several cases to the effect that an inheritance tax is not one on property, but one on the succession of property."

These decisions were all made with knowledge of the sections of the act which we have quoted, and under these decisions the inheritance tax, from the death of the decedent, becomes a lien upon the property which will ultimately go to the devisees and legatees, but the amount of that lien, although it has accrued at the death of the decedent, is not finally determined until the estate is ready to be closed, and many of the authorities relied on by the tax commissioner recognize the distinction to be drawn between cases where property of the estate at the time of the appraisement is the property which ultimately is distributed, and those cases where, in the settlement of an estate, the character of the property has been changed.

In Ross on Inheritance Taxation, § 270, we find:

"While the inheritance tax is said to accrue as of the time of the death of the decedent, yet it does not attach to the very articles of property of which he dies possessed, but rather upon such property as remains for distribution after the payment of debts and expenses of administration. The tax is imposed upon the legatee, devisee, or heir, and upon him only as to such property as he actually takes on distribution. The amount of the tax as to any distributees, is to be determined according to the value of the 'net succession,' that is, the value of such property as remains for him after the satisfaction of such charges and bur-

dens as may lawfully be satisfied in due course of administration, for it is only such property that can truly be said to pass to him. The courts have recognized this doctrine without any express statutory declaration."

In Gleason & Otis on Inheritance Taxation, page 294, it is said:

"In order to ascertain the value of the interest transferred which is subject to the tax we must not only consider the assets but also the liabilities, consisting of the debts of the estate and the expenditures which must be deducted in order to ascertain the net value of the estate passing to the heir, devisee or distributee. . . ."

In 26 R. C. L. p. 232, it is said:

"If after appraisement an estate shrinks without fault of the executor so that no funds come to his hands available for the payment of the tax, he is not bound to pay it out of his own pocket."

The supreme court of Illinois, a jurisdiction from which comes one of the cases above cited in support of the general rule, held, in *Ayers v. Chicago Title & Trust Co.*, 187 Ill. 42, 58 N. E. 318, that:

"The appraisement was made upon the basis of the entire value of the decedent's property at the time of his death, and not of the value of the estate received by each person under the will. Such an appraisement offers no proper basis for the levy of a tax under the Inheritance Tax Law."

The supreme court of California, another jurisdiction from which an opinion is cited by the appellant, in the case of *In re Kennedy's Estate,* 157 Cal. 517, 108 Pac. 280, 29 L. R. A. (N. S.) 428, has this to say:

"The provisions of our tax act clearly show that the tax imposed thereby is one solely upon the devisee, legatee or heir, and one upon him only as to such property as he actually takes on distribution as devisee,

legatee or heir. It would appear to be a most absurd and inequitable provision that imposed a tax on one for the privilege of succeeding as heir, devisee or legatee to certain property of the decedent, where the very property to which he is so held to succeed is lawfully diverted by the probate court to other purposes and never can be distributed to him. Suppose in this very case, the real property set apart as a homestead had been devised by the will to another person than the wife. Suppose, also, that the money paid as family allowance exhausted the property available to pay a legacy given to still another person. Under the treasurers' theory that the property had passed to the devisee and the legatee, within the meaning of the act, at the moment of the death of deceased, the devisee and legatee would be liable for the whole tax thereon, although both devise and legacy had been wholly defeated, so far as any practical effect is concerned, by the orders of the probate court. As we have seen, the fact that the wife was here the devisee and legatee is of no consequence in determining the proper construction of this act. Happily no such conclusion appears to be warranted by the act. Section 12, relied on as implying an 'exemption' as to debts due from a deceased, is rather a clear recognition that no tax was intended to be imposed as to property that was lawfully diverted by the probate court from the purposes declared by the will or by the laws of succession: the object thereof being simply to provide a method for the repayment to the legatee, devisee, heir, or next of kin of a proper proportion of the money theretofore paid by him as a tax where the property already delivered is diminished by the subsequent proving of debts against the decedent.''

And in another California case above cited, *In re Hite's Estate,* 159 Cal. 392, 113 Pac. 1072, Ann. Cas. 1912C 1014, 32 L. R. A. 1167, the right to a reduction from the appraised value was recognized, the court referring to the *Kennedy* case, *supra,* as follows:

"The exact question thus presented has apparently never before arisen in this or any other state. It was held by this court in *Estate of Kennedy,* . . . that property lawfully diverted in due course of administration from the beneficiaries under the will of a deceased or the law of succession, for the payment of expenses of administration, and the debts of the decedent, and in making such provision as is authorized by law for the support of the family of decedent, including property exempt from execution set apart to the family and also a homestead so set apart, does not pass by will or by the intestate laws of the state within the meaning of our inheritance tax law, and is therefore not to be included in fixing the tax to be paid by the beneficiaries. The basis of this conclusion was that the property given by will or devolving under the law of succession passes to the devisee, legatee, or heir at the death of the deceased *subject to these burdens,* and that so much thereof as is lawfully diverted from the beneficiary under the will or law of succession in due course of administration never does actually pass to him. It was held, in accord with the general current of authority in states having a substantially similar statute to ours, that 'the provisions of our tax act clearly show that the tax imposed thereby is one solely upon the devisee, legatee or heir, and one upon him only as to such property as he actually takes on distribution as devisee, legatee or heir.' The rule applied was that stated in *Estate of Gihon,* 169 N. Y. 443, as follows: 'The collateral inheritance tax does not attach to the very articles of property of which the deceased died possessed. It is imposed only on what remains for distribution after expenses of administration, debts and rightful claims of third parties are paid or provided for. It is on the net successions to the beneficiaries.' While the tax imposed by the act is not a tax on property as such, but a tax upon one for the privilege of succeeding to property, the amount of the tax as to any beneficiary is to be determined according to the value of the 'net succession'; that is, the value of such property as remains for him after the satisfac-

tion of such charges and burdens as may lawfully be satisfied in due course of administration. It is only such property that can be properly said to actually pass to the beneficiary.''

This is the full extent of the ruling in the *Kennedy* case. It appears to us to be the full extent of the rule in the various cases cited in the opinion in that case, and also in the cases relied on by learned counsel for appellants here. No decision has been cited or found by us that appears to authorize the conclusion that property illegally diverted by an executor or administrator and thus lost to the beneficiary has not passed to the beneficiary within the meaning of the act, or that the value of such property so diverted may be deducted in fixing the amount of the tax. The distinction between such a condition and the condition existing in the *Kennedy* case and analogous cases is very clear, and to our minds it requires the inclusion of the value of the property so illegally diverted in the determination of the amount of the tax.''

In *In re Pepper's Estate,* 154 Pa. St. 331, 28 Atl. 353, it was said:

''We have reached the conclusion that under the most favorable construction of the act, so far as respects the contention on behalf of the commonwealth, they are not so liable, and for the reason that the amount paid the caveator was never received by them as legatees, and under the act it is only so much of the estate which actually passes to them by virtue of the will that is liable for the tax. . . . so that all the legatees take is the amount of their bequests, after deducting the sum paid the caveator, and this they concede is subject to the tax. This, we think, is the proper construction to be placed upon the act of assembly. A contrary view would not only be inequitable, but work a hardship upon legatees and distributees, and surely it was never contemplated thus to impose a double burden . . .''

The supreme court of Connecticut, in *Appeal· of Gallup,* 76 Conn. 617, 57 Atl. 699, said:

"The property upon whose value the amount of the tax is computed is that residuum of the decedent's property, inventoried under our law, remaining after claims of creditors and charges of administration have been satisfied. This property constitutes the 'estates of deceased persons' referred to in the Act. . . ."

The court of appeals of New York, another jurisdiction whose decision has been relied on as supporting the general rule, holds:

"The transfer tax imposed by the laws of this state is a tax, not on the property of the estate, but on the succession by the legatee, devisee, next of kin, or heirs at law to the fortune of the deceased. Personal property does not pass directly from the deceased to his legatee or next of kin; but all that such legatee or next of kin takes is what may be coming to him from the estate on its distribution after settlement. The amount represented by the expenditures of the administrator or the expenses of administration never passes to the legatee or next of kin, and therefore is not subject to the tax." *In re Gihon's Estate,* 169 N. Y. 443, 62 N. E. 561.

See, also, *In re Hutchison,* 105 App. Div. 487, 94 N. Y. Supp. 354, where we find the statement that,

"The result of the determination of the appraiser would be that the residuary legatee would be required to pay a tax upon $66,095.88, which it is not entitled to receive and never can receive—a result certainly not contemplated by the legislature when imposing a rule by which the value of an annuity should be determined when it became necessary to tax the annuitant."

The supreme court of Iowa in *Morrow v. Durant,.* 140 Iowa 437, 118 N. W. 781, 23 L. R. A. (N. S.) 474, held to like effect.

The interpretation which our cases and those from other jurisdictions point to is logical and has the effect

of enforcing the collection of the inheritance tax from the devisees and legatees, and does not result in the glaring inequalities and injustices which would result from the collection of the tax based upon the appraised valuation, where, during the course of administration, it has been necessary to dispose of the appraised real property under orders of the court for the purpose of completing the administration. The lower court in this case charged the collection of the tax upon the appraised value of such real property as was not disposed of during the administration, and upon such real property as was disposed of allowed the tax based on the price for which the property was sold. This conclusion is correct, and the decree which he entered will be affirmed.

HOLCOMB, C. J., BRIDGES, FULLERTON, and PARKER, JJ., concur.