## No. 19,026.

PEOPLE OF THE STATE OF COLORADO, EX REL. DUKE W.
DUNBAR, ATTORNEY GENERAL, ET AL. *v.* FLOYD J.
MASON, JR., EXECUTOR, ETC.

(355 P. [2d] 257)

Decided September 26, 1960.
Rehearing denied October 24, 1960.

Mr. DUKE W. DUNBAR, Attorney General, Mr. FRANK E. HICKEY, Deputy, Mr. NEIL TASHER, Assistant, Mr. FLOYD B. ENGEMAN, Assistant, for plaintiffs in error.

Mr. ALDEN T. HILL, Mr. RALPH H. COYTE, for defendant in error.

*En Banc.*

MR. JUSTICE DOYLE delivered the opinion of the Court.

PLAINTIFF in error, Neil Tasher, as Inheritance Tax Commissioner of the State of Colorado, seeks review of a judgment of the County Court of Weld County which sustained objections of defendant in error as Executor of the estate of Marion M. Mason to the report of the Commissioner. This report subjected the proceeds of a certain insurance policy to the Inheritance Tax statute. The county court ruled that the policy was not includable as part of the estate and that the Executor was entitled to a statutory deduction of the full amount of a certain indebtedness part of which was defrayed by the proceeds of the policy. In referring to the parties, reference will be to plaintiff in error as Commissioner and defendant in error as Executor.

At the time of her death, the decedent was indebted to the Fort Collins Production Association in the amount of $58,092.64 and there was then in existence a policy on her life issued pursuant to a creditors' group insurance contract between Production Association and the Old Republic Credit Life Insurance Company. Under the terms of a master policy, a contract between the

Production Association and the insurer, the former was able to insure the lives of its debtors in an amount up to $10,000.00, but not exceeding the amount of the indebtedness. Under the terms of this contract, the association is named as the irrevocable beneficiary to the extent of the debt, a maximum of $10,000.00. With respect to the disposition of proceeds, the policy provides that the amount shall be paid to the creditor and further states:

" * * * Any balance remaining after payment of the debtor's indebtedness to the Creditor beneficiary shall be paid to the estate of the debtor or in lieu thereof at the option of the Company such balance may be paid to any relative by blood or connection by marriage of the insured debtor or to any other person equitably entitled thereto by reason of having incurred expense occasioned by the maintenance or illness or burial of the insured debtor."

A specific certificate of insurance issued to decedent is in substantially the same terms as the above provision, that is, it gives the insurer an option to pay any balance to the estate of the debtor or to a relative or other person equitably entitled thereto. The premiums are paid directly by the Production Association but charged by it to the account of the debtor — insured. Another provision allows the Production Association to cancel, but parol testimony at the trial was to the effect that an individual debtor could cancel a policy at will and that in such event the amounts paid in would be refunded.

In urging reversal, the Commissioner argues that either the $10,000.00 is includable in the estate of the decedent, in which case the $58,000.00 would be a valid deduction, or in the alternative, if the $10,000.00 is not includable nevertheless the deduction from the gross estate of $58,000.00, the amount of the debt, would as a result of this payment be reduced to $48,000.00, thus having the same legal consequences as inclusion. Specifically he argues:

1. The insurance policy was made up of funds the

proceeds of which were "payable in such a manner as to be subject to the claims against (decedent's) estate," within the meaning of C.R.S. '53, 138-4-9.

2. The policy was one, the proceeds of which were "payable in such manner as to be subject to distribution as part of decedent's estate."

3. The decedent owned the incidents of ownership which rendered the policy includable in his estate.

The Executor's position is that (1) decedent owned none of the incidents of ownership, and (2) that the proceeds of the policy were not subject to "claims" against the decedent's estate — that if it was subject to any claims it was subject to only one claim and was thus not within the contemplation of the statutory language. *Thirdly,* the Executor argues that to reduce the deduction from $58,000.00 to $48,000.00 is an indirect way of doing an act which is invalid when attempted to be accomplished directly.

The statute around which the above described contentions revolve is C.R.S. '53, 138-4-9. It provides:

*"Proceeds of insurance policies.* — Proceeds of insurance policies on the life of a decedent payable in such manner as to be subject to the claims against his estate or to distribution as a part thereof shall be taxable.

"The excess over the sum of seventy-five thousand dollars, when paid immediately, or the excess over the sum of seventy-five thousand dollars of the commuted value and remainder thereof if paid in installments, of the net proceeds of all insurance policies and insurance contracts with insurance companies, payable either directly or through the medium of a trustee, to or for the use of named or described beneficiaries, taken out upon the life of the decedent and with respect to which the decedent at the time of his death possessed any of the incidents of ownership, shall be taxable. Said exemption of seventy-five thousand dollars shall be prorated among the beneficiaries of such policies to or for whose use they are payable in proportion to the benefits accruing

to them respectively, and shall be in addition to all other exemptions allowable to them respectively as in this article provided. The exemption provided in this paragraph shall not apply to the proceeds of any insurance policies which are taxable under the provisions of the first paragraph of this section. Annuity contracts or proceeds shall not be entitled to the exemption provided in this section."

I.

The first question is whether the second paragraph of the above statute applies to a policy of insurance which is indirectly payable to the estate of the decedent so that the incidents of ownership test applies. Or does this test apply only to policies payable to named beneficiaries? This question has not been previously decided by the Court, but it seems clear that the first paragraph is intended to cover only those policies which are made payable directly or indirectly to the estate. With respect to policies subject to claims against the estate or to distribution as a part thereof, the exemption provision is inapplicable and such policies are taxable in the full amount thereof. The tests of taxability are set forth in this paragraph. Whether subject to taxation or not depends on whether the proceeds are payable so as to be subject to claims against the estate or to distribution as a part thereof. If a policy is expressly payable to the decedent's estate there can be no question as to its being subject to paragraph 1 of 138-4-9, supra, and the "incidents" test does not come into play. It follows that the test of incidents of ownership applies only to the named beneficiary type of policy and does not limit taxability where the policy is payable to the estate. There is language in the case of *Hamilton v. People,* 113 Colo. 141, 154 P. (2d) 1008, which suggests a contrary conclusion. It was there said:

" * * * We think it was not the legislative intent to impose a tax when there exists only a mere naked right to recover control of an insurance policy when no con-

trol of the policy in fact exists by means necessarily barren of any economic benefit to the policyholder and which necessarily results in the event of his death in the scaling down of the tax on his estate in an amount equal to the tax imposed on the proceeds of the policy. * * * "

The present question was not before the court in the *Hamilton* case. There the insured had assigned an insurance policy on his life to a creditor to whom he was heavily indebted. Upon his death, the full amount of the policy was paid to the creditor. The Commissioner thereupon assessed inheritance tax against the creditor, the taxable transaction being the receipt by the creditor of the proceeds. The court reversed the judgment which had upheld the tax and ruled that the item was not taxable as insurance proceeds payable to a named beneficiary; since the insured had retained none of the incidents of ownership the creditor whose debt was thereby being paid was not "inheriting" and was not subject to the tax. At the outset, the court pointed out that the effort to tax was not being made under the first paragraph of what is now 138-4-9, supra. On this, it was said:

"The commissioner does not claim that the proceeds of the policy were subject to claims against decedent's estate and hence taxable; but that they are taxable under that portion of the statute providing, 'the excess over the sum of seventy-five thousand ($75,000.00) dollars, * * * ' "

An effort to assess an inheritance tax against a creditor on a transaction which merely discharges his debt presents a question which bears no similarity to the case at bar. *Gufler's Estate,* 43 Wash. (2d) 440, 261 P. (2d) 434, is relied on by the Executor. Its holding that the "benefit to the estate test" is invalid is not applicable here. The Washington statute does not contain a provision such as the first paragraph of our 138-4-9. It declares that such proceeds shall be taxable to the per-

son, partnership or corporation entitled thereto, and that the exemption is not applicable to the executor or administrator. Our statute is broader and is not limited to proceeds payable directly to the executor or administrator.

We must therefore reject the contention that insurance proceeds are taxable if and only if the deceased has retained some "incidents of ownership" in the policy. We further hold that the limitations in the first paragraph of 138-4-9, supra, demonstrate sufficiently the decedent's property interest in the policy so as to render the transfer a taxable event subject to constitutional imposition of tax.

## II.

■ The next question is whether the provisions of C.R.S. '53, 138-4-9, first paragraph, are sufficiently broad to include the proceeds of this policy. It is to be noted that the provision is not narrowly limited to proceeds which are payable directly to the administrator or executor (to the estate). It embraces proceeds if payable in such a manner as to be subject to the claims against the decedent's estate or to distribution as a part thereof. The evident purpose of these two tests is to subject to inheritance tax the proceeds of policies which benefit the estate regardless of whether they are directly payable thereto. Are the proceeds subject to claims against the estate? Counsel for the Executor argues that the term "claims" should be construed to mean all claims and not a single one against funds earmarked for its satisfaction.

■ Some light is thrown on this question by C.R.S. '53, 138-4-16, which deals with deductible claims and declares that claims are deductible which are "debts of the transferor which constitute lawful claims against his estate." Are the funds here in question subject to claims against the decedent's estate? True they are not subject to all claims, but are unquestionably subject to the particular claim of the creditor here in that the $10,000.00

operates to reduce to $48,000.00 a claim which without these funds would be $58,000.00. Since it operates to reduce the amount of this claim and consequently the amount of the total claims, it is an asset of the estate within the meaning of the above test. Claims, as here used, is not limited to plural claims and it is not limited to claims which are formally filed. Sensibly construed in the present context, it means an indebtedness which constitutes a charge against the gross assets of the estate. See *Gufler's Estate,* supra, wherein the Washington Court said (261 P. (2d) 437):

"The tax is 'measured by the value of the assets after payment of debts owing by the decedent at the time of his death.' This does not mean that the debts must all be paid before the tax is computed. So long as the obligation has been timely established, as a bona fide debt of decedent, it is a deductible item in measuring 'the full value of the entire property.' "

We further conclude that the proceeds in question come within the second test of paragraph 1, subject to "distribution as a part thereof" (decedent's estate). The estate is unquestionably enriched to the extent of $10,000 as a result of the payment of this sum against an indebtedness which the estate would otherwise have to pay. This is the view adopted by the U. S. Court of Tax Appeals in construing the counterpart federal statute and the regulations issued pursuant thereto in *Estate of James H. Matthews,* 3 Tax Court Reports 525. See also *Estate of Silas B. Mason,* 43 BTA 813. Cf. *In Re Wilson's Estate,* 363 Pa. 546, 70 A. (2d) 354. In the *Matthews* case, it was held that proceeds of insurance policies which had been assigned to a bank to secure an indebtedness and which were paid directly to the creditor bank were within the statutory terms "received by or for the benefit of the estate," wording very similar to the words of our statute. It was there said:

" * * * On the facts in this case and upon consideration of the cases relied upon by petitioner, and other

cases noted, we conclude that the entire amount of the proceeds of the policies which were paid to the creditor bank on decedent's indebtedness must be included in the gross estate. * * * "

### III.

The further argument of the Commissioner is that even though we hold that the proceeds of the policy in the case at bar are not subject to 138-4-9, supra, that nevertheless these proceeds are generally taxable because they reduce the amount of the allowable deduction by $10,000.00 and thus increase the net taxable estate by this amount. Having concluded that 138-4-9, supra, is applicable, it is unnecessary to determine taxability on this alternative theory. The analysis, however, does serve to support our conclusion that these proceeds are subject to "distribution as a part thereof." At the moment of death the indebtedness is reduced in the amount of the proceeds of the policy. The right of Production Association to collect this $10,000 ripens at once and is not subject to either foreclosure or any other legal steps. From the fact that the deductible indebtedness is reduced at the moment of death from $58,000.00 to $48,-000.00, it follows that allowable claims against the estate are reduced in a like amount, hence the proceeds serve to swell the assets of the estate subject to "distribution as a part thereof."

Here the son, who was the sole beneficiary under the will of the decedent, received certain property (tractors, farm equipment, etc.) which was mortgaged to secure the debt to the Production Association. The tax is measured by the net value of the property to which he succeeded. To measure the net value without reference to reduction of the debt by the insurance proceeds would require us to close our eyes to the obvious controlling facts.

We conclude that the transaction in question is a taxable one. It follows that the judgment must be reversed and the cause remanded with directions to the county

court to overrule the objections of the Executor and to approve the report of the Commissioner.

Mr. JUSTICE DAY dissents.

Mr. JUSTICE DAY dissenting:

I must dissent from the majority opinion as being a strained construction of the inheritance tax laws violative of a sound principle of law — "Where there is doubt as to the construction of a statute imposing an inheritance, succession, estate, or gift tax, it should be resolved in favor of the person taxed, and the statute construed strictly against the taxing power." 85 C.J.S., page 881.

To understand what the majority opinion has condoned here, we must take a look at the record in the trial court. The inheritance tax commissioner filed his assessment of tax, and under "Miscellaneous Personal Property" listed $10,000 proceeds of the insurance policy which is in dispute here. An examination of the policy will clearly disclose that it was *not payable to the estate,* could not on the death of the decedent be paid into the estate, and never became an asset of the estate. The majority opinion upholds the action of the tax commissioner by semantics, interestingly playing upon the meaning of "claims" as used in the statute. C.R.S. '53, 152-12-2. In that respect I pose the question: If this insurance policy, payable as provided herein, were to be found among the effects of a decedent who had no other tangible assets, could the proceeds of such a policy be made *subject to the claims* and priorities as provided by C.R.S. '53, 152-12-2? In that section are listed five classes of *"claims."* For the proceeds to be subject to the "claims" against an estate they would of necessity be also subject to the priorities provided by law. The proceeds of this policy are completely out of the reach of estate claimants, regardless of their priorities, because

they are in fact not payable either to the estate or *in a manner* so as to be subject to claims.

The widespread and disastrous effects which can result from the holding of the majority opinion are incalculable. Lawyers and others planning estates so as to reduce as much as possible the inheritance tax — a legitimate function whether it be in the income tax or inheritance tax field — are confronted with the proposition that insurance earmarked to pay debts comes under the first paragraph rather than the second paragraph of the statute. This could conceivably now include policies pledged as collateral in banks. And what about loans made by insurance companies to their own policyholders? The same reasoning applied in the majority opinion could apply to the reduction of the debts in this particular category. Recently there has grown up a special type of insurance available to banks and loan companies on the life of their borrowers to the extent of the amount borrowed, and payable to the banks or loan companies. Under this opinion they now become taxable. And this despite the fact that these proceeds never come into or never become a part of the estate or subject to the laws thereunder. *In Re Ferguson Estate,* 113 Wash. 598, 194 Pac. 771, 13 A.L.R. 122. The court said, " * * * inheritance taxes are imposed upon the succession rather than upon the property * * *." This is true of our statute as well as the Washington statute. And the court went on to say that the tax accrues upon the death of the decedent. Its amount depends upon the amount of the property passing by succession, determined as of the same date. See also *In Re Bowers Estate,* 196 Wash. 79, 81 P. (2d) 813. The equity value of the personal property in the case at bar, calculated according to the above rule, could not be determined along with the insurance.

A casual reading of this policy reveals that it is true life insurance, payable to a named beneficiary who, in law, had an insurable interest in the life of the decedent. The majority opinion brushes off as unimportant wheth-

er the policy contained incidents of ownership, and this despite the fact that the commissioner claimed in the trial court, and argued before this court, the very points enumerated in the majority opinion under Item No. 3, "The decedent owned the incidents of ownership which rendered the policy includable in his estate." I have no quarrel with the commissioner on that point. I believe he was absolutely correct and that the incidents of ownership is an important facet of this decision. The commissioner argues here, and I believe it is true, that the ability of the insured to cancel the policy at will and to have refunded to him portions of the unearned premium, coupled with the fact that the insured paid the premiums, gives him a very necessary incident of ownership. Incidently this is an incident of ownership not found in the Hamilton case. So if that be true, and I re-iterate that I believe the commissioner to be correct, then this was a life insurance policy, payable to a named beneficiary, containing incidents of ownership, and it brings the policy squarely within the second paragraph of C.R.S. '53, 138-4-9, which is quoted verbatim in the majority opinion. In the record in the trial court the assessment of the tax commissioner reveals that there are no other insurance policies on the life of the decedent except this one, and although this one is in fact includable in the estate, it is not includable under "Miscellaneous Personal Property" but is includable under "Insurance Policies." If it were listed there, standing alone at $10,000, it would reveal quite forcefully that it was not taxable because the total policies of insurance do not exceed $75,000.

Other portions of the majority opinion are alarming. It holds because a debt was reducible the estate was benefited and hence the estate is "unquestionably enriched to the extent of $10,000." Of course if this were an estate tax like the federal tax, the view of the United States Tax Appeals might be applicable here, but I do not believe that *Estate of Matthews,* as cited in the ma-

jority opinion is in point when construing our tax laws. The inheritance tax of Colorado is a tax of succession and transfer of property of decedent. The estate may be enriched but the heir is not. He gets the same amount but loses the statutory exclusion of $75,000 in insurance. In the case of encumbered property, the tax is upon the equity and the equitable value of stocks and bonds and other types of securities. Under the majority opinion the commissioner is able to tax indirectly what he cannot tax directly — such things as Blue Cross payments made payable to member hospitals; Blue Shield payments made payable to member doctors; veterans burial benefits; burial benefits under the Social Security Law; fraternal benefits payable to funeral parlors, and a host of prepaid funeral contracts. The reason I envision all of these things being taxed individually is that every one of these payments go either to third parties who might or could be claimants of the third class. These benefits often provide, as did the policy in this case, that they are payable to relatives by blood or to persons equitably entitled thereto by reason of having incurred expenses occasioned by the maintenance or illness or burial of the decedent. Under the majority opinion, instead of the debts of the decedent being fixed at the time of his demise, which so far as he is concerned can neither be increased nor decreased, the commissioner, armed with this opinion, will be able to search outside of the estate to see whether someone, a fraternal society perhaps, or the federal government, will at sometime after the death, pay to someone a portion of the medical, burial or interment expenses. Having found such proceeds, he then disallows as an item of deduction against the estate a sum equal to the benefits paid by any of these agencies. Thus indirectly he can tax every dollar of the proceeds of such benefits. That, in my opinion, was never intended by the legislature.